UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14320-CIV-MOORE/LYNCH

GAY-STRAIGHT ALLIANCE OF
OKEECHOBEE HIGH SCHOOL, an
unincorporated association and YASMIN
GONZALEZ, through her parent and next
friend Frankie Michelle Gonzalez,

           Plaintiffs,

vs.                                                                                      **JURY TRIAL DEMANDED**

SCHOOL BOARD OF OKEECHOBEE
COUNTY and TONI WIERSMA, individually
and in her official capacity as principal of
Okeechobee High School,

           Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendants SCHOOL BOARD OF OKEECHOBEE COUNTY ("SBOC") and TONI WIERSMA ("Principal Wiersma"), individually and in her official capacity as principal of Okeechobee High School (collectively the "Defendants"), and pursuant to Fed. R. Civ. P. 12(b)(6), jointly move this Court to dismiss Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted. Defendants submit the following Memorandum of Law in support thereof.

**THE FIRST AMENDED COMPLAINT**

The First Amended Complaint filed by Plaintiffs seeks a declaratory judgment, injunctive relief, and nominal damages "to remedy unlawful action by the Defendants to thwart the formation of, and deny equal access to, the Okeechobee Gay-Strait Alliance

("GSA") at Okeechobee High School ("OHS")." Plaintiffs bring their Equal Access Act ("EAA") claim under both 20 U.S.C. § 4071 and 42 U.S.C. § 1983. (FAC, ¶¶ 39 and 42).

Plaintiff GSA is an unincorporated association of students who attend OHS. GSA brings the suit on behalf of itself as an organization and on behalf of its members. Plaintiff Yasmin Gonzalez ("Yasmin") is a student at OHS and the president of GSA. She sues by her next friend and parent, Frankie Michelle Gonzalez. She sues in her individual capacity and as GSA president. (FAC, ¶¶ 6 and 8).

Defendant SBOC, a public entity created by Fla. Stat. § 1001.30, is the legal entity that operates OHS. (FAC, ¶ 9). Defendant Principal Wiersma is the principal of OHS and is being sued in her official and individual capacities. Principal Wiersma must approve student clubs in order for them to receive the official recognition of the school. (FAC, ¶ 10). Plaintiffs allege that, on their information and belief, SBOC and OHS receive federal funding. (FAC, ¶ 11).

Plaintiffs allege that GSA and Yasmin attempted to secure approval as a non-curricular school club from Principal Wiersma and that she refused to grant recognition of GSA and denied it access to OHS on an equal basis with other non-curricular school clubs. The First Amended Complaint further alleges that "Defendants are depriving the Plaintiffs of rights, privileges, and immunities secured by the Equal Access Act, 20 U.S.C. § 4071 and that Defendants are thus liable to the Plaintiffs pursuant to 42 U.S.C. § 1983. (FAC, ¶¶ 16-17, 39, and 42).

Plaintiffs allege that SBOC has delegated to Principal Wiersma final policy making authority regarding approval of school clubs at OHS and that SBOC provides no procedure for appealing her decisions regarding club approval. (FAC, ¶¶ 34 and 35).

According to Plaintiff's conclusory allegation, "[t]he decision to deny equal access to the GSA was made pursuant to a policy, practice or custom of SBOC."  (FAC ¶¶ 36).

## PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted as follows.

I. Plaintiff GSA, an unincorporated association, is not a "person" entitled to bring a claim under 42 U.S.C. § 1983.

II. Defendant Principal Wiersma is not a "public secondary school which receives Federal financial assistance," either individually or officially, so as to subject her to the Federal Equal Access Act.  20 U.S.C. §§ 4071(a).

III. Plaintiffs fail to allege with sufficient specificity the *Monell* requirements to impose Section 1983 liability upon SBOC for Principal Wiersma's conduct.

IV. Principal Wiersma is entitled to qualified immunity because the facts pled by Plaintiffs do not show that her conduct violated clearly established law of which a reasonable person should have known at the time of her actions.

## SUPPORTING AUTHORITIES

**I. Plaintiff Gay-Straight Alliance of Okeechobee High School, an unincorporated association, is not a person entitled to bring a claim under 42 U.S.C. § 1983.**

Plaintiff GSA is an unincorporated association made up of students of Okeechobee High School.  As an unincorporated association, it is not a "person" entitled to bring a claim under 42 U.S.C. § 1983 and its claims must be dismissed.

The Tenth Circuit Court of Appeals has recently addressed as a question of first impression the very question of whether an unincorporated association is a "person" for

the purposes of Section 1983 protections. That determination is vital since only "persons" may be Section 1983 plaintiffs. In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir. Nov. 7, 2006), an anti-abortion association and its members brought a Section 1983 action against the City of Wichita and two city officials to challenge the denial of parade permits and a bond order. The city defended, claiming that the association, as an unincorporated association, was not a person under 41 U.S.C. § 1983. The Tenth Circuit Court of Appeals agreed, but only after conducting a careful analysis of the statute's language and purpose.

The Court used as its analytical pattern the one established by the Supreme Court in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court considered for the first of many times whether an entity is a "person" for purposes of a Section 1983 action. In *Monell*, observed the *Lippoldt* Court, the Supreme Court considered three factors in determining whether an entity was a 42 U.S.C. § 1983 "person": "(1) legislative history, (2) the general treatment of corporations in 1871, and (3) the Act of Feb. 25, 1871, 41 U.S.C. § 2, 16 Stat, 431 (the 'Dictionary Act of 1871')." *Lippoldt*, 468 F.3d at 1213.

Using this analysis, the Court first found "there is no indication within the legislative history of Section 1983 that Congress considered the term 'persons' to include unincorporated associations." *Id.* To the contrary, the Court's review of the comments

4

made by members of Congress at the time "indicate a restricted view of who could qualify as a proper Section 1983 plaintiff." *Id.*

The Court next found that "there was no general understanding in 1871, . . . that unincorporated associations should be treated as natural persons. Instead, the common law essentially held that unincorporated associations lacked the capacity to sue or be sued." *Id.* The Court could find nothing to indicate that Congress intended to dispense with long-established immunities or defenses under the common law, including the lack of capacity of an unincorporated association to sue or be sued.

The Court finally considered the Dictionary Act of 1871, as it read when Section 1 of the Civil Rights Act was enacted. That Act

> stated that "in all acts hereafter passed . . . the word 'person' may extend and be applied to bodies politic and corporate." . . . The Supreme Court has further observed that "an examination of the authorities of the era suggests that the phrase ['bodies politic and corporate'] was used to mean *corporations, both private and public (municipal).*"

*Id.* at 1214 (emphasis supplied). Therefore, although the Dictionary Act of 1871 extended the definition of "person" to include corporations, both municipalities and corporations, it did not extend the definition to include unincorporated associations.

The three-part analysis of the Civil Rights Act of 1871 convinced the *Lippoldt* Court that unincorporated associations were not intended by the Congress that passed the Act to fall within the term "person" in the Act. It therefore reversed the district court's ruling that the association was a person and remanded the case "with direction to dismiss [the unincorporated association's] claim." *Id.* at 1216.

As an unincorporated association, Plaintiff GSA is not a "person" entitled to bring a claim under 42 U.S.C § 1983. Defendants therefore respectfully move this Court to

5

dismiss GSA for failure to state a claim upon which relief can be granted.

**II.     Principal Wiersma is not subject to the Equal Access Act because she is not a "public secondary school which receives Federal financial aid."**

Defendant Principal Wiersma, who is sued in her individual and official capacities, is the Principal of Okeechobee High School. She is a natural person.

The Equal Access Act makes it unlawful

> for any public secondary school which receives Federal financial assistance . . . to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a). The plain meaning of this provision is that it only subjects public secondary schools which receive Federal financial assistance to the Act. It does not subject principals, either as individuals or in their official capacities, to the Act.

Plaintiffs have failed to allege that Principle Wiersma is a "public secondary school which received Federal financial assistance." Defendants therefore respectfully move this Court to dismiss Plaintiffs' claim against Principal Wiersma for failure to state a claim upon which relief can be granted under either the Equal Access Act or the Equal Access Act brought pursuant to Section 1983.

**III.    Plaintiffs fail to allege with sufficient specificity the *Monell* requirements to impose Section 1983 liability upon SBOC for Principal Wiersma's conduct.**

Plaintiffs' Second Claim is brought pursuant to 42 U.S.C. § 1983. Plaintiffs allege that Principal Wiersma's decision to deny access to GSA violated their rights under the Equal Access Act, giving rise to a cause of action under Section 1983. However, Plaintiffs failed to allege the threshold elements of a Section 1983 claim

6

pursuant to *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Section 1983 liability cannot be asserted against the SBOC based on the actions of Principal Wiersma on a respondeat superior theory. Rather, Plaintiffs must show that the deprivation of civil rights was caused by some official policy of the SBOC. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985) ("there must be an affirmative link between the policy and alleged constitutional violation"). Under *Monell*, "official policy" can be found in one of three ways:

1) an express policy, that, when followed, deprives a person of his or her constitutional or statutory rights (*Monell*, 436 U.S. at 690);

2) a widespread practice that, though not authorized by an express policy or written law, is so permanent and well settled as to constitute a custom or usage with the force of law (*Monell*, *supra,* at 691); or

3) an allegation that the constitutional injury was caused by a person with final policymaking authority (*Monell*, *supra,* at 694).

*See also Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). Plaintiffs' First Amended Complaint fails to allege with specificity that Principal Wiersma holds final policy making authority.

When Section 1983 claims are raised against governmental officials in their individual capacities, the Eleventh Circuit required more specific pleading of the facts alleged as supporting the claim. " 'Heightened pleading is the law of this circuit' when § 1983 claims are asserted against governmental officials in their individual capacities." *Laurie v. Ala. Court of Crim.* Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001), *citing*

*GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1367-68 (11th Cir. 1998).  See also *Kyle K. v.* Chapman, 209 F.3d 940, 944 (11th Cir. 2000) (recognizing "heightened pleading requirement application to section 1983 actions against individual government officials").  Plaintiffs make no more than the conclusory allegation that Principal Wiersma is the final policy maker regarding approval of school clubs at OHS.  They fail to identify with specificity the policy, practice, or custom that gives Principal Wiersma the authority to set the policy for approving school clubs as opposed to giving her the authority to carry out SBOC policy regarding club approval.

The law is settled that order for the actions of a governmental official (here, Principal Wiersma) to trigger entity liability under *Monell,* she must be imbued with final policymaking authority.  "Only those officials who have final policymaking authority may render the municipality liable under § 1983."  *Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).  Although governmental liability may be imposed for the decision of municipal policymakers, the decisionmaker must possess final authority in accordance with State law to establish municipal policy with respect to the action ordered and must be plead in order to be actionable.  *See Wetzel v. Hoffman,* 928 F.2d 376, 377 (11th Cir. 1991).  Only if it is alleged that a defendant is a "final policymaker" can a court proceed to the question of whether the act of that defendant constituted government policy.  *Id.*

If, as Plaintiffs allege, SBOC has adopted a policy to deny equal access to GSA (FAC ¶ 36), then Principal Wiersma is not the final policy maker in approving school clubs.  Her denial of access to Plaintiff GSA was merely carrying out the Board's policy.

8

Whether a public official has "final policymaking authority" is a question of state law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988). In Florida, the "final policymaker" for the schools of Okeechobee County is the School Board of Okeechobee County. Fla. Const. Art. IX, § 4(b) and Fla. Stat. 1001.32(2). The Florida Constitution and state statute task the school board with the authority to "operate, supervise and control" the schools within the district. The extent of a Florida school principal's authority is limited by Fla. Stat. §1001.54 to authority over school personnel, supporting the authority of teachers to remove disruptive students from the classroom, providing leadership in development of the school improvement plan, ensuring the accuracy and timeliness of the school report, the management and care of instructional materials, and cooperating in Florida's Family and School Partnership for Student Achievement Act.

By statute, the policy making functions of Okeechobee County Schools is held by SBOC. Principal Wiersma holds no such authority. At best, Principal Wiersma exercised her professional judgment in carrying out SBOC's student club policy. Plaintiffs have failed to allege with the specificity required by Rule 8 of the Federal Rules of Civil Procedure that Principal Wiersma's decision not to permit the GSA was a decision made by a final policymaker. Their Second Claim against Principal Wiersma should therefore be dismissed.

**IV.    Principal Wiersma is entitled to qualified immunity because the facts pled by Plaintiffs do not show that her conduct violated clearly established law of which a reasonable person should have known at the time of her actions.**

Defendant Toni Wiersma is sued both individually and in her official capacity as the Principal of Okeechobee High School. (FAC, ¶ 10). As an official of the public entity created by Fla. Stat. § 1001.30, Principal Wiersma is entitled to a qualified

9

immunity from Plaintiffs' claims because her purported denial of access to Plaintiffs was not in violation of a clearly established constitutional or statutory right and her conduct was objectively reasonable.

The doctrine of qualified immunity serves to shield a government official as "an immunity from suit rather than a mere defense to liability[.]" *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "Because qualified immunity is an immunity from suit, the defense should be resolved at the earliest possible stage of the litigation," *Saucier*, 121 S.Ct. at 2156, and should protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 349, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

To overcome Principal Wiersma's qualified immunity defense, Plaintiffs have the burden of alleging that her conduct violated a clearly established federal right. *Lassiter v. Alabama A & M Univ., Bd. Of Trustees*, 28 F.3d 1146, 1149-51 (11th Cir. 1994). The Eleventh Circuit has further elaborated on the qualified immunity standard.

> For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel, (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

*Id.* at 1150. The Eleventh Circuit has thus established a powerful constraint on causes of action under Section 1983.

> Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Whether the . . . complaint alleges a violated of such a clearly-established right is a question of law."

*Denno v. School Board of Volusia County, Florida*, 218 F.3d 1267, 1270 (11th Cir.

2000).

To the extent Plaintiffs did allege a violation of a clearly established federal right, the Court must then determine whether Principal Wiersma's conduct was objectively reasonable in light of pre-existing law. Principal Wiersma's conduct was not only objectively reasonable, it was mandated by the Florida Legislature in Fla. Stat. § 1003.46(2)(a) and (b). By these two sections, the Florida Legislature requires Florida schools to:

> (a) Teach abstinence from sexual activity outside of marriage as the expected standard for all school-age students while teaching the benefits of monogamous heterosexual marriage.
> (b) Emphasize that abstinence from sexual activity is a certain way to avoid out-of-wedlock pregnancy, sexually transmitted diseases, including acquired immune deficiency syndrome, and other associated health problems.

The stated purposes of the GSA is to provide an environment for and building awareness of issues concerning the "gay, lesbian, bisexual, transgender, questioning, perceived as being any of the aforementioned, and their straight allies." High school students, children who are unmarried, would be discussing issues related to gay, lesbian, bisexual, and transgendered individuals. Although "straight" students would have been offered a place in the club, apparently their admission would have been conditioned upon the heterosexual student being "allied" with sexual orientations the school is mandated to discourage as not being beneficial to the students. It is not difficult to understand the logic behind Principal Wiersma's decision to deny access to Plaintiffs' club as being in conflict with the Florida Legislature's statutorily mandated educational mission.

The district court in *Caudillo v. Lubbock Independent School District*, 311 F.Supp.2d 550 (N.D.Tex. 2004) recognized the danger of permitting in through a side

11

door what the state prohibits coming in the front door. There the school denied an application proposing a gay/straight student association because the school board had an abstinence-only policy and the club's stated goal of discussing sexuality directly contravened the board's abstinence-only curriculum and its policy banning discussions of sexual activity from its campuses.

> The group's speech, according to its stated goals would clearly contradict the District's abstinence-only curriculum. Thus, logically, the GAP Youth/LGSA's speech creates a 'material and substantial' interference with the LISD's educational mission and function in that it contravenes LISD's abstinence-only policies and curriculum.

*Id.* at 568. The court stated unequivocally that a school may restrict speech that contradicts the school's abstinence-only curriculum. "'A school need not tolerate student speech that is inconsistent with its basic educational mission, even though the government could not censor similar speech outside the school.'" *Id.* at 563, *quoting Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988).

The *Caudillo* court found that the school's "abstinence-only policy is clearly reasonable" *id.,* and could be applied by the principal to deny access to a proposed EAA club that would have been inconsistent with that policy.

Principal Wiersma can not be said to be either "plainly incompetent" or to have "knowingly violated the law" when she denied access to GSA on the same basis as was upheld in the Texas District Court and is mandated by state statute. She is therefore entitled to the protection of the doctrine of qualified immunity and claims against her should be dismissed.

WHEREFORE, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants School Board of Okeechobee County and Principal Toni Wiersma, in both her individual and official capacities, respectfully request this Court to dismiss Plaintiff's Second Claim as to GSA and dismiss Plaintiffs' First and Second Claims as to Principal Wiersma, for failure to state a claim upon which relief can be granted under.  Defendant Principal Toni Wiersma requests this Court to dismiss all the First, Second, and Third Claims as to her for failure to state a claim upon which relief can be granted since she holds a qualified immunity for her actions.

Dated:  January 11, 2007                              Respectfully submitted,

                                                      **s/ David C. Gibbs III**
                                                      David C. Gibbs III (FBN 0992062)
                                                      dgibbs@gibbsfirm.com
                                                      Barbara J. Weller (FBN 00058513)
                                                      bweller@gibbsfirm.com
                                                      GIBBS LAW FIRM, P.A.
                                                      5666 Seminole Blvd., Ste. 2
                                                      Seminole, FL 33772
                                                      Telephone:   727-399-8300
                                                      Facsimile:   727-398-3907

                                                      ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                      **s/ David C. Gibbs III**
                                                      David C. Gibbs III

## SERVICE LIST

*Gay-Straight Alliance of Okeechobee High School and Yasmin Gonzalez*
*v. School Board of Okeechobee County and Toni Wiersma,*
Case No. 06-14320-CIV-MOORE/LYNCH
United States District Court, Southern District of Florida

Robert F. Rosenwald, Jr.
Randall C. Marshall
American Civil Liberties Union Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, Florida 33137
Tel: 786-363-2713
Fax: 786-363-1392
Email: RRosenwald@aclufl.org
Email: RMarshall@aclufl.org

                                         **s/ David C. Gibbs III**
                                         Attorney