## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14320-CIV-MOORE/LYNCH

GAY-STRAIGHT ALLIANCE OF
OKEECHOBEE HIGH SCHOOL, an
unincorporated association and YASMIN
GONZALEZ, through her parent and next
friend Frankie Michelle Gonzalez,

    Plaintiffs,

  vs.

SCHOOL BOARD OF OKEECHOBEE
COUNTY and TONI WIERSMA, individually
and in her official capacity as principal of
Okeechobee High School,

    Defendants.

---

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
# FOR PRELIMINARY INJUNCTION AND
# ACCOMPANYING MEMORANDUM OF LAW

---

David C. Gibbs III (FBN 0992062)
dgibbs@gibbsfirm.com
Barbara J. Weller (FBN 00058513)
bweller@gibbsfirm.com
GIBBS LAW FIRM, P.A.
5666 Seminole Blvd., Ste. 2
Seminole, FL 33772
Telephone:   727-399-8300
Facsimile:   727-398-3907

ATTORNEYS FOR DEFENDANTS SCHOOL
BOARD OF OKEECHOBEE COUNTY and TONI
WIERSMA

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ............................................................................................. iv

I.      Introduction........................................................................................................2

II.     Statement of Facts..............................................................................................2

III.    Preliminary Injunction Standards .....................................................................3

IV.     Plaintiffs have failed to show a substantial likelihood of succeeding on the
        merits of their Equal Access Act claim..............................................................5

        A.      The standard of law to apply in evaluating an Equal Access Act
                claim........................................................................................................5

        B.      For purposes of this response, School Board of Okeechobee
                County agrees that it is a public school that receives federal funds. .....5

        C.      For purposes of this response, School Board of Okeechobee
                County agrees that it has opened a "limited open forum" in
                Okeechobee High School..........................................................................6

        D.      Plaintiffs have not shown a substantial likelihood that they will be
                able to demonstrate at trial that Defendants discriminated against
                them..........................................................................................................6

                1.      Under the Equal Access Act safe harbor exceptions, a
                        school may legitimately deny the formation of a student-led
                        club even when the school has a "limited open forum."............6

                2.      Defendants may enforce a policy prohibiting student-
                        initiated sex-based clubs because the Equal Access Act
                        does not protect clubs whose meetings would materially
                        and substantially interfere with the orderly conduct of
                        educational activities within the school. ..................................10

                3.      The School Board of Okeechobee County may prohibit
                        sex-based clubs in order to protect the well-being of
                        students without violating the Equal Access Act......................13

V.      Plaintiffs have failed to show a substantial threat of irreparable injury if
        the preliminary injunction is not granted. .........................................................15

VI.    The threatened injury to the moving party does not outweigh whatever damage the proposed injunction may cause the opposing party.......................................15

VII.   The public interest favors keeping the authority to educate and protect the students of Okeechobee High School with the School Board of Okeechobee County and Principal Wiersma. ..................................................................16

VIII.  Conclusion ........................................................................................................................18

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bethel School District v. Fraser*, 478 U.S. 675 (1986)....................................................... 12, 13-14

*Board of Educ. of the Westside Community Schools v. Mergens*, 496 U.S. 226 (1990)........................................................................................ 6-7, 16, 17

*Caudillo v. Lubbock Independent School District*, 311 F.Supp.2d 550 (N.D. Texas 2004)............................................................9, 10, 11-12, 13, 14-15

*Colin v. Orange Unified School District*, 83 F.Supp.2d 1135 (C.D. Cal. 2000) ..............................................................................................................10

*Gernetzke v. Kenosha Unified School Dist. No. 1,* 274 F.3d 464 (7th Cir. 2001) ...................................................................................................... 17-18

*Hsu v. Roslyn Union Free School Dist. No. 3*, 85 F.3d 839 (2d Cir. 1996)...................... 11, 16-17

*Pyle v. South Hadley Sch. Comm.*, 861 F.Supp. 157 (D. Mass. 1994) ................................... 12-13

*Seigel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) ...................................................................... 3-4

*Shanley v. Northeast Independent School Dist., Bexar County, Tex.,* 462 F.2d 960 (5th Cir. 1972) .........................................................................10

*Tally-Ho, Inc. v. Coast Community College District,* 889 F.2d 1018 (11th Cir.1989) ...............................................................................................................4

*Tinker v. Des Moines Indep. Community School District*, 393 U.S. 503 (1969) ................................................................................................................10

*Trachtman v. Anker***,** 563 F.2d 512 (2d Cir. 1977)........................................................................14

*United States v. DBB, Inc.,* 180 F.3d 1277 (11th Cir. 1999) ........................................................3

*United States v. Lambert,* 695 F.2d 536 (11th Cir. 1983).................................................................

*Walker-Serrano v. Leonard.,* 325 F.3d 412 (3rd Cir. 2003) ........................................................12

**Federal Statutes**

U.S. CONST. amend. I ......................................................................................................................1

20 U.S.C. § 4071 .................................................................................................. 1, 5, 11, 13-14

42 U.S.C. § 1983 ...................................................................................................................1

FED. R. CIV. P. 65 ..............................................................................................................3, 4

**State Statutes**

FLA. STAT. § 1001.42 ..............................................................................................................8

FLA. STAT. § 1003.43 ..............................................................................................................8

FLA. STAT. § 1003.46 ..............................................................................................................8

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-14320-CIV-MOORE/LYNCH

GAY-STRAIGHT ALLIANCE OF
OKEECHOBEE HIGH SCHOOL, an
unincorporated association and YASMIN
GONZALEZ, through her parent and next
friend Frankie Michelle Gonzalez,

        Plaintiffs,

    vs.

SCHOOL BOARD OF OKEECHOBEE
COUNTY and TONI WIERSMA, individually
and in her official capacity as principal of
Okeechobee High School,

        Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION AND
ACCOMPANYING MEMORANDUM OF LAW**

    Defendants SCHOOL BOARD OF OKEECHOBEE COUNTY ("SBOC") and TONI

WIERSMA ("Principal Wiersma"), individually and in her official capacity as principal of

Okeechobee High School (collectively the "Defendants"), hereby oppose Plaintiffs' GAY-

STRAIGHT ALLIANCE OF OKEECHOBEE HIGH SCHOOL ("GSA") and YASMIN

GONZALEZ'S ("Gonzalez") motion for preliminary injunction and requests this Court deny the

preliminary injunction.  Defendants submit the accompanying memorandum of law in support of

their opposition to the Plaintiffs' motion.

## I.      Introduction

This is a case in which Plaintiffs, the Gay-Straight Alliance, an unincoporated association, and Yasmin Gonzalez, a student at Okeechobee High School ("OHS"), have sued the School Board of Okeechobee and the Principal of Okeechobee High School for denying their application to start a student-initiated, sex-based student club during noninstructional time. Plaintiffs claim that Defendants' denial of approval for their gay-straight club violates the federal Equal Access Act, 20 U.S.C. § 4071 ("EAA"), 42 U.S.C. § 1983, and is a violation of their First Amendment Free Speech rights.

Defendants have moved to dismiss Plaintiffs' action and have not yet answered Plaintiff's First Amended Complaint.

Plaintiffs have moved this Court for a preliminary injunction grounded only on their claim that Defendants have violated the EAA rights of Plaintiffs.

## II.     Statement of Facts

Defendants have taken the liberty of numbering 1 through 14 the paragraphs contained in Plaintiffs' Facts found beginning at page 2 of their Motion For Preliminary Injunction and Accompanying Memorandum of Law.  Using those numbers, Defendants agree with Plaintiffs' Facts 1-2, 5-12, and 14.  In addition, Defendants state their own facts below and as recited throughout the Memorandum of Law.

Defendant Toni Wiersma is the Principal of Okeechobee High School, which is within the jurisdiction of Defendant School Board of Okeechobee County.  (Exhibit B, Declaration of Principal Toni Wiersma ("W Dec.," ¶ 3)).  Principal Wiersma did deny the request of students to establish a Gay-Straight Alliance club at Okeechobee High School because of her concern that a

sex-based club for students would interfere with the school's abstinence-based curriculum and would pose a danger to student members of such a club.  (W Dec., ¶¶ 5-7).

Some of the students who were interested in establishing the Gay-Straight Alliance at OHS made vague claims of harassment and intolerance by OHS students and faculty.  When questioned about the specifics of the instances of harassments, none of the students were able to identify any harassing incidents involving them specifically.  (W Dec., ¶ 9, 12).  The students also described mental and emotional difficulties they were experiencing with regard to their sexual orientation.  Principal Wiersma was concerned that these mental health issues were beyond the expertise of both the proposed teacher sponsor of GSA and the students themselves. She arranged for the school guidance counselor to make herself available to counsel the students and extended that invitation to the students.  The students elected not to avail themselves of Principal Wiersma's offer.  (W Dec., ¶¶ 11, 13-15).

### III.   Preliminary Injunction Standards

Rule 65 of the Federal Rules of Civil Procedure governs the procedure for the issuance of a preliminary injunction.  Generally, the status quo is maintained until the court can enter a final decision on the merits of the case.  *United States v. DBB, Inc.,* 180 F.3d 1277, 1282 n.5 (11th Cir. 1999).  In their motion, however, Plaintiffs are asking this Court to alter the status quo at OHS pending the outcome of this litigation.  This court must be wary of altering the status quo until Defendants have had full opportunity to present the merits of their defense.

Granting a request to alter the status quo during the pendency of litigation would be a drastic remedy particularly where, as in this case, the subject matter is controversial and is targeted toward minor children.  "[A] preliminary injunction is an extraordinary and drastic remedy and is not to be granted unless the movant clearly establish[es] the burden of persuasion

as to each of the four prerequisites." *Seigel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotations and citations omitted). The granting of a preliminary injunction is "'the exception rather than the rule,' and plaintiff must clearly carry the burden of persuasion." *Id.* at 1180, *quoting Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975).

A party seeking entry of a preliminary injunction must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) a threatened injury to the moving party that outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that, if issued, the injunction would not be adverse to the public interest. *Tally-Ho, Inc. v. Coast Community College District,* 889 F.2d 1018, 1022 (11th Cir. 1989).

Plaintiffs have moved for a preliminary injunction only upon their contention that they are substantially likely to succeed on the merits of their claim under the EAA. Since they make no showing at all as to their Section 1983 claim or their First Amendment speech claim, this Court need not address those two claims in its consideration of the preliminary injunction motion.

The Rule 65 procedures governing the grant of a preliminary injunction prohibit granting a preliminary injunction "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The amount of the security is within the discretion of this Court and, while the Court may decide that the imposition of security would be unwarranted in this case, the failure to consider the matter of giving security is error.

**IV.    Plaintiffs have failed to show a substantial likelihood of succeeding on the merits of their Equal Access Act claim.**

    **A.    The standard of law to apply in evaluating an Equal Access Act claim.**

The EAA was passed by Congress in 1984 to "counteract perceived discrimination against religious speech in public schools and overturn two appellate court decisions that had held that allowing student religious groups to meet on campus . . . would violate the Establishment Clause." *Colin v. Orange Unified School District*, 83 F.Supp.2d 1135, 1142 (C.D. Cal. 2000).  Specifically, the Act makes it

> unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or . . . discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).  (Exhibit A, Equal Access Act, 20 U.S.C. § 4071).  In order for Plaintiffs to be entitled to a preliminary injunction, they must first demonstrate a substantial likelihood that they will be able to demonstrate at trial that SBOC and Principal Wiersma violated the EAA.  To make such a showing, Plaintiffs carry the burden of demonstrating that Defendant SBOC 1) is a public secondary school that receives federal assistance; 2) has a "limited open forum," and 3) has discriminated against students wishing to conduct a meeting within that open forum.

    **B.    For purposes of this response, SBOC agrees that it is a public school that receives federal funds.**

Although Plaintiffs have offered no proof of this fact in their motion for preliminary injunction, Defendants will assume solely for purposes of this response to Plaintiffs' preliminary injunction motion that OHS is a public secondary school that receives federal assistance. Defendants do not agree that Defendant Principal Wiersma is a public secondary school that receives federal assistance.

**C.    For purposes of this response, SBOC agrees that it has opened a "limited open forum" in OHS.**

Defendants concede for purposes of this argument that OHS has opened a "limited open forum" in OHS.  The school permits noncurricular clubs to meet during noninstructional time on school property.  Plaintiffs' motion for preliminary injunction expends significant effort in listing the "noncurricular" clubs that currently exist at OHS.  That list is irrelevant to this motion for preliminary injunction since Defendants agree that the school does have a limited open forum.

**D.    Plaintiffs have not shown a substantial likelihood that they will be able to demonstrate at trial that Defendants discriminated against them.**

Defendants agree that they have established a "limited open forum" on the OHS campus under the terms of the EAA.   Nevertheless, Plaintiffs have not demonstrated a substantial likelihood that they can prove that the school has discriminated against those students who wish to establish a student-initiated sex-based club at OHS under the EAA.

**1.    Under the Equal Access Act safe harbor exceptions, a school may legitimately deny the formation of a student-led club even when the school has a "limited open forum."**

The "limited open forum" standard established in the EAA does not require school authorities to grant access to any and every club that applies for recognition.  The Supreme Court decision that upheld the constitutionality of the EAA, *Board of Educ. of the Westside Community Schools v. Mergens*, 496 U.S. 226, 241-42 (1990), was careful to point out that the EAA did not create a constitutionally-protected free speech forum but used a term of art, a "limited open forum" which it specifically defined within the Act itself. [1]

---

[1]  The statutory "limited open forum" standard is unique to the EAA and is not equivalent to the constitutional free speech forum standards in which public schools are generally held to be limited, designated, or semi-public fora.

The Justices specifically held that they were not deciding the Equal Access Act case on Free Speech grounds.  "Because we rest our conclusion on statutory grounds, we need not decide—and therefore express no opinion on—whether the First Amendment requires the same result."  *Id.*, at 247.  *See also, id.* at 253 ("Because we

> The operative language of the statute, 20 U.S.C. § 4071(a), of course, refers to a "limited open forum," a term that is specifically defined in the next subsection, § 4071(b). Congress was presumably aware that "limited public forum," as used by the Court, is a term of art, see, *e.g., Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45-49, 103 S.Ct. 948, 954-57, 74 L.Ed.2d 794 (1983), and had it intended to import that concept into the Act, one would suppose that it would have done so explicitly. Indeed, Congress' deliberate choice to use a different term—and to define that term—can only mean that it intended to establish a standard different from the one established by our free speech cases. See Laycock, 81 Nw.U.L.Rev., at 36 ("The statutory 'limited open forum' is an artificial construct, and comparisons with the constitutional ['limited public forum'] cases can be misleading").

*Id*. at 242.

In order to permit public schools to retain the necessary control of their school environment and curriculum, Congress did provide schools with safe harbor exceptions to the EAA under which a school may legitimately deny the formation of a student-initiated club even when the school has opened a limited open forum.

> [T]he Act expressly does not limit a school's authority to prohibit meetings that would "materially and substantially interfere with the orderly conduct of educational activities within the school." § 4071(c)(4); *cf. Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969). The Act also preserves "the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary." § 4071(f).

Id. at 241.

The "limited open form" created by the EAA does not require Okeechobee schools to permit student-initiated clubs to be established where the subject matter of the club would be sex and sexuality. At the time of Principal Wiersma's denial of approval of Plaintiff's club, the State of Florida clearly directed, and continues to direct, that in order to protect the well-being of students in Florida schools, officially sanctioned discussions about sexual identity or sexual

---

hold that petitioners have violated the Act, we do not decide respondents' claims under the Free Speech and Free Exercise Clauses.")

orientation were limited to school officials teaching about abstinence before marriage as a way to avoid teen pregnancies, sexually transmitted diseases, and the attendant mental and emotional health issues.  FLA. STAT. §§ 1001.42(2)(n), 1003.43(1)(i), and 1003.46(2)(a) and (b).[2]  (Exhibit C).  In short, Florida has an abstinence policy in teaching about matters of sexual activity and sexual contact.

The State's abstinence policy requires the Okeechobee County School District to teach that there is no such thing as safe sex outside of monogamous marriage relationships.  SBOC Responsibilities of Principals Policy 3.12 (Exhibit D) makes Principal Wiersma "responsible for the enforcing of Florida Statutes, State Board of Education rules, School Board rules and directives of the Superintendent."  SBOC Student Clubs and Organizations Policy 4.30 (Exhibit E) prohibit the student clubs from "any activity or act which violates Florida Statutes, School Board rules, or the policies of the local school."

---

[2] FLA. STAT. § 1001.42(2)(n) prescribes the following course of study:

* * *

(n)    Comprehensive health education that addresses concepts of community health; consumer health; environmental health; family life, including an awareness of the benefits of sexual abstinence as the expected standard and the consequences of teenage pregnancy; mental and emotional health; injury prevention and safety; nutrition; personal health; prevention and control of disease; and substance use and abuse.

FLA. STAT. § 1003.43(1)(i) make it a state requirement for graduation a student's receipt of:

* * *

(1)(i)    One-half credit in life management skills to include consumer education, positive emotional development, marriage and relationship skill-based education, nutrition, parenting skills, prevention of human immunodeficiency virus infection and acquired immune deficiency syndrome and other sexually transmissible diseases; benefits of sexual abstinence and consequences of teenage pregnancy, information and instruction on breast cancer detection and breast self-examination, cardiopulmonary resuscitation, drug education, and the hazards of smoking.

FLA. STAT. § 1003.46(2)(a) and (b) set out health education goals for the Florida schools.

(a)    Teach abstinence from sexual activity outside of marriage as the expected standard for all school-age students while teaching the benefits of monogamous heterosexual marriage.

(b)    Emphasize that abstinence from sexual activity is a certain way to avoid out-of-wedlock pregnancy, sexually transmitted diseases, including acquired immune deficiency syndrome, and other associated health problems

Florida law requires the SBOC to establish, teach, and direct the activities on its property from an abstinence-based model. The school may restrict sex-based clubs, whether based upon homosexual, bisexual, or heterosexual sexual identities, from the school's limited open forum because a student club organized around what immature students perceive to be their sexual orientation or preference at that early stage of their lives would materially and substantially interfere with the orderly conduct of the school's abstinence-based curriculum and would not protect student well-being. Defendants are within the terms of the safe harbor exceptions to the EAA when they limit the subjects for which EAA clubs may be created to those purposes for which the forum was established.

Although Defendants were not specifically aware of these safe harbor provisions of the EAA at the time they denied Plaintiffs' request to form a student-initiated sex-based club at OHS, it is these exceptions to the EAA that the SBOC relied upon in principle to deny formation of Plaintiffs' sex-based club: (1) That the sex-based club would "materially and substantially interfere with the orderly conduct of educational activities within the school," specifically the school's abstinence-based curriculum; and (2) that the school was required to "protect the well-being of students and faculty."

Because neither the principal, nor the SBOC would have permitted any sex-based clubs of any kind to be organized by students at the school (W Dec., ¶ 21), prohibition of Plaintiffs' club was not discriminatory. Prohibiting the subject matter of sexuality within a limited open forum does not discriminate based on viewpoint and is, therefore, a permissible content limitation.

In *Caudillo v. Lubbock Independent School District*, a high school in Texas denied a Gay and Proud Club's application to be recognized as an Equal Access school club in part because

the school had a strict abstinence-only policy. *Caudillo v. Lubbock Independent School District*, 311 F.Supp.2d 550 (N.D. Texas 2004). The *Caudillo* Court ruled that the school board did not engage in viewpoint discrimination because the ban was on the entire subject matter, and the group's viewpoint regarding that subject matter did not enter the school board's consideration when it declined the club's application. *Id*. at 562.

Similarly, OHS has legitimately excluded the entire topic of sex and sexuality from its limited open forum as it is permitted to do under the safe harbor terms of the EAA in order to protect the well being of the students and to avoid disruption to its abstinence-based educational and curricular goals.

> **2.      Defendants may enforce a policy prohibiting student-initiated sex-based clubs because the Equal Access Act does not protect clubs whose meetings would materially and substantially interfere with the orderly conduct of educational activities within the school.**

The EAA safe harbor exceptions for evaluating speech limitations within the context of public schools mirrors the standards developed in *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503 (1969). The *Tinker* Court held that a public school may limit speech if that speech would materially and substantially interfere with schoolwork or discipline, since "conduct by the student . . . which for any reason . . . materially disrupts classwork . . . is, of course, not immunized by the constitutional guarantees of freedom of speech." *Id*. at 513 (finding that students' expression which was limited to wearing armbands consisting of two-inch strips of cloth did not affect the educational process or infringe on the rights of other students).[3]

---

[3]"Students do not . . . have all the First Amendment rights of adults in other settings because their rights must be 'applied in light of the special characteristics of the school environment.'" *Colin v. Orange Unified School District,* 83 F.Supp.2d 1135, 1141 (C.D. Cal. 2000), *quoting Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506 (1969). For instance, the Fifth Circuit acknowledged the special characteristics of the school environment when it held that, while a school may not discipline students for publishing an underground newspaper off campus during non-school hours, "efforts at expression by high school students may be subjected to prior screening under clear and reasonable regulations." *Shanley v. Northeast Independent School Dist., Bexar County, Tex.,* 462 F.2d 960, 970 (5th Cir. 1972). The court noted that "[t]he purpose of any screening regulation, at

The EAA incorporates this standard in similar language in 20 U.S.C. § 4071(c)(4): "Schools shall be deemed to offer a fair opportunity to students who wish to conduct a meeting within its limited open forum if such school uniformly provides that--[t]he meeting does not materially and substantially interfere with the orderly conduct of educational activities within the school."  If a rule against permitting clubs that interfere with educational activities is evenly applied, the school will have satisfied the EAA.  In this case, all sex-based clubs would be equally and appropriately denied.  (W Dec., ¶ 21).

The Second Circuit applies this standard to a limited open forum in *Hsu v. Roslyn Union Free School Dist. No. 3*, 85 F.3d 839 (2d Cir. 1996).  It noted that "[t]he Equal Access Act is not a set of federal handcuffs fitted to school principals.  Schools must have rules to control their students, and rules will always have the effect of suppressing someone's idea for a club."  *Id*. at 862.  While holding that requirements for officers of Emily Hsu's Christian club would not undermine the school's mission, the Court explained that, "the Act's mandate of equal access can be trumped by the School's responsibility for . . . maintaining 'appropriate discipline in the operation of the school' *See  Tinker v. Des Moines Indep. Community School District,* 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969)."  *Id*.

The *Hsu* court further noted the broad scope of the language of "material and substantial interference with the orderly conduct of educational activities within the school," and observed that "[t]he phrase 'educational activities' of course embraces practically everything schools do, including the availability of extracurricular opportunities."  *Id*. at 870, n. 30.

The *Caudillo* court also applied this principle to find that the Gay and Proud Group that had been denied school approval had goals that clearly contradicted the school's abstinence-only

least in theory, is to prevent disruption and not to stifle expression.  Thus, the school board does not have a difficult burden to meet in order to justify the existence of a prior screening rule."  *Id*. at 969-70.

curriculum.  The proposed club's speech, then, "logically … creates a 'material and substantial' interference with [the school's] educational mission and function in that it contravenes [the school's] abstinence-only policies and curriculum."  *Caudillo,* 311 F.Supp.2d at 568.

Even though some forms of sexual or sexuality discussion may not rise to the level of harassment or lewd or obscene speech, discussions about sex and sexuality may still disrupt the educational process, particularly in a school with an abstinence-based sex education curriculum.

The Supreme Court recognizes the sensitivity of public schools and minors to sexuality and sexual topics.  In *Bethel School District v. Fraser*, the Court ruled that it was reasonable and permissible for a school to punish a student for giving a nominating speech containing sexual metaphors at a school assembly. The school had students as young as twelve years old, and many were bewildered by the sexual allusions and other students parroting them. The *Bethel* Court recognized that the school could place "limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel School District v. Fraser*, 478 U.S. 675, 684 (1986).  The Third Circuit has also observed that the age of the students is a special consideration and "[h]uman sexuality provides the most obvious example of age-sensitive matter" in *Walker-Serrano v. Leonard.,* 325 F.3d 412, 417 (3rd Cir. 2003) (ruling that a school may prohibit an elementary student from circulating a petition during recess).

Similarly, the defendant school in *Pyle v. South Hadley Sch. Comm.* chose to prohibit students from wearing shirts with sexually suggestive slogans, and the court stated that this prohibition was not unreasonable for high school students.  The court observed that testimony suggested that many students were uncomfortable in an atmosphere permeated with sexual

references and that it might interfere with their ability to study. *Pyle v. South Hadley Sch. Comm.*, 861 F.Supp. 157, 171 (D. Mass. 1994).

Courts have also recognized that permitting circumstances under which health and safety problems for students might invite lawsuits are also disruptive to the educational process. The *Caudillo* court ruled that a school board could prohibit sex-based clubs, noting that the school risked facing lawsuits if it "allows a group to meet under circumstances which the school reasonably knew or should have known would cause harassment and safety problems" because the injured party or outside groups might sue. On the other hand, when the school prevented the potential circumstances that might invite harassment or safety risks, the school faced a lawsuit from a Gay and Proud Group that fell under the category of prohibited topics. The court believed, however, that, in the balance, the school was wiser to choose the risk of a lawsuit from the Gay and Proud Group rather than risk harassment and safety problems for students as well as lawsuits from injured parties. *Caudillo,* 311 F.Supp.2d at 569. The SBOC made the same choice in the circumstances that have led to this lawsuit.

### 3.     The SBOC may prohibit sex-based clubs in order to protect the well-being of students without violating the Equal Access Act.

The EAA also protects a school's authority to control its educational environment by providing an exception for the formation of some student clubs in order to "protect the well-being of students and faculty." 20 U.S.C. § 4071(f).

Courts have long recognized the authority of school officials to determine how best to protect the students in their care, particularly in judging what material is age-appropriate for them. Sexuality is among the most sensitive topics for youth, and courts give wide latitude to a school's ability to restrict sexual topics. In *Bethel*, the Supreme Court commented regarding the sexually explicit speech for which the student plaintiff was punished, "The speech could well be

seriously damaging to its less mature audience, many of whom were only 14 years old and on the threshold of awareness of human sexuality." *Bethel,* 478 U.S. at 683.

Similarly the Second Circuit upheld a school's authority to ban sex-based topics from school-tolerated speech in *Trachtman v. Anker*, 563 F.2d 512 (2d Cir. 1977).  In that case, the school prohibited students from conducting a survey on sexuality among the student body because it feared the survey would cause emotional harm to the students since they were just beginning to grapple with issues of sexuality.  The lower court had allowed the prohibition for 9th and 10th grade students, but not for 11th and 12th grade students.  The Appeals Court reversed, saying the school should be allowed to determine what is appropriate for its students at all grade levels, including 11th and 12th.  *Id*. at 519.  The court recognized that the school's action was "principally a measure to protect the students committed to their care," and even though the school could not predict with certainty how many students from each grade might be harmed, the court deferred to the school authorities' experience and knowledge, and the community's trust vested in them, to reasonably foresee harm to the students.  *Id.*

In *Caudillo,* the court applied this reasoning to a school that denied a Gay and Proud Group recognition on the basis of the school's abstinence-only policy and its prohibition of any discussion of sexual activity on the campuses.  *Caudillo* differed from other instances where schools had prohibited gay-straight clubs because in those cases where courts required schools to permit such clubs under the EAA, the schools did not have abstinence-based education policies or bans on discussions of sexual activity.  Furthermore, those schools did not cite the well-being of their students as a reason for the denial.  *Caudillo,* 311 F.Supp.2d at 559, n. 5.  Noting that the school is delegated to protect the mental and physical health and well-being and safety of its students, the court stated that "the compelling interest [of protecting students' well-being]

includes protecting students from teen pregnancy, sexually transmitted diseases, the harms associated with sexual activity and minors, and the harms associated with exposing minors to sexual subject matters." *Id.* at 571. The court reviewed the goals of the proposed club and found that the group's intention to discuss sexual topics "leads to the logical conclusion that minors would be exposed to subject matter that is detrimental to their physical, mental, and emotional well-being." *Id*. The GSA seeking OHS recognition in this case is a student organization with a national network with a reputation and a national track record for meeting around sex-based identities, including gay, lesbian, straight, bisexual, transgender, or any other sexual preference.

**V.   Plaintiffs have failed to show a substantial threat of irreparable injury if the preliminary injunction is not granted.**

Plaintiffs have sought to convince the school that their only intention is to discuss incidents of harassment and intolerance, and that they do not intend to discuss sex or sexuality in their proposed GSA. If that intention is correct, there will be no irreparable injury to the plaintiffs by maintaining the status quo at OHS until the merits of this case are determined by the Court. Principal Wiersma has already offered to permit the plaintiffs and any other students who wish to join them to discuss issues of harassment and intolerance with the school guidance counselor. That offer remains on the table for these students. (W Dec., ¶¶ 18, 20). If the students accept that offer, even if only temporarily until the merits of this case are decided by the Court, there will be no irreparable injury to Plaintiffs.

**VI.   The threatened injury to the moving party does not outweigh whatever damage the proposed injunction may cause the opposing party.**

For reasons discussed above, the threatened injury to the Defendant school in this case and to the general student body if the status quo at OHS is not maintained during the pendency of

this case far outweighs any threatened injury to the plaintiffs.[4]  The students continue to have an open offer from Principal Wiersma to meet with the school guidance counselor to discuss issues of harassment and intolerance, which they continue to refuse, insisting that they must be permitted to form a GSA club.  (W Dec., ¶ 18, 20).

On the other hand, the injury that could result to the school from potential lawsuits that might arise if student health and safety is compromised by permitting a sex-based club to form at the school, coupled with the potential risks and dangers that teen sex always presents, is substantial.[5]

## VII.  The public interest favors keeping the authority to educate and protect the students of OHS with the SBOC and Principal Wiersma.

Both lawmakers and jurists have expressed concern that the EAA will be construed to make the public educators' task of educating and protecting America's youth even harder by wresting more authority away from them.  Neither the legislative history of the EAA nor the public interest supports such an application, and the supporting case law does not require it.

The EAA was passed primarily in response to a handful of cases in which courts found that after-school Bible clubs were prohibited from meeting in public schools because of their religious nature.  *Mergens*, 496 U.S. at 239.  However, at the time, both supporting and opposing members of Congress expressed concern that the Act might leave schools powerless to control access for student groups that might harm students or undermine the school's mission.  *Hsu,* 85 F.3d at 854.  Senator Hatfield, the primary Senate sponsor for the Act,  countered that concern by

---

[4]  In addition, there would be no constitutional injury to Plaintiffs since their motion for preliminary injunction is based upon statutory requirements of the EAA and not upon First Amendment considerations.

[5]  Defendants will provide expert witness testimony at trial to substantiate the potential risks that accompany teen sex.

Defendants' Opposition to Plaintiffs' Motion
For Preliminary Injunction and Accompanying
Memorandum of Law

arguing that the Act contained exceptions that would still allow schools to outlaw such groups, admitting "that 'we are [not] going to be able to anticipate every possible instance that will arise under this expansion of rights.'"  *Id.* at 855, *quoting* 130 Cong. Rec. 19,225 (1984).  Congress's objective was to address ongoing religious discrimination against public school students in a secular manner that would not run afoul of the Establishment Clause.  The EAA was never intended to undermine a school's ability to control its academic environment or to enforce rules for the protection of student well being.

Judges have also questioned the wisdom of interpreting the EAA to take tools out of school officials' hands.  Justice Stevens, in his lone dissent to the *Mergens* decision, was the first jurist to raise this concern.  He wrote,

> As a matter of pedagogy, delicate decisions about immersing young students in ideological cross-currents ought to be made by educators familiar with the experience and needs of the particular children affected and with the culture of the community in which they are likely to live as adults.  *See Hazelwood School Dist. v. Kuhlmeier*, 484 U.S., at 271-272, 108 S.Ct., at 570.  As a matter of politics, public schools are often dependent for financial support upon local communities.  The schools may be better able to retain local favor if they are free to shape their policies in response to local preferences.  See *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 49-53, 93 S.Ct. 1278, 1305-07, 36 L.Ed.2d 16 (1973).  As a matter of ethics, it is sensible to respect the desire of parents to guide the education of their children without surrendering control to distant politicians.  See *Meyer v. Nebraska*, 262 U.S. 390, 399-403, 43 S.Ct. 625, 626-28, 67 L.Ed. 1042 (1923).

*Mergens* at 291, n.26 (Justice Stevens, dissenting).

Similarly, the Seventh Circuit "express[ed its] doubts about the appropriateness of litigation that is intended . . . to wrest the day-to-day control of our troubled public schools from school administrators and hand it over to judges and jurors who lack both knowledge of and responsibility for the operation of the public schools," describing the regulatory and disciplinary problems schools face as "formidable."  *Gernetzke v. Kenosha Unified School Dist. No. 1,* 274

F.3d 464, 467 (7th Cir. 2001).   Beyond academic concerns, schools must deal with teen pregnancy, sexually transmitted disease, school violence, illegal drugs, and social and psychological disorders, all of which affect the daily lives of the students they are charged to protect and educate. Schools cannot control the backgrounds students come from or the pressures they face away from school, but they should be able to control the environment they provide for students on school campuses so long as they do so within statutory and constitutional parameters, as Defendants have done in this case.

## VIII.   Conclusion

Defendants agree that OHS has established a limited open forum in which noncurricular clubs may meet during noninstructional time.  Plaintiffs have not shown a substantial likelihood of demonstrating that Defendants may not choose to close the school's forum to sex-based clubs that would materially and substantially interfere with their educational goals and endanger the well-being of the students.  Defendants have exercised their authority under the EAA safe harbor provisions to deny access to all sex-based student clubs, whatever the sexual preference of the students who make an EAA application.  Plaintiffs have failed to carry their burden of showing a substantial likelihood of proving that Defendants have discriminated against Plaintiffs.

WHEREFORE, Defendants School Board of Okeechobee County and Principal Toni Wiersma, in both her individual and official capacities, object to Plaintiffs' motion for preliminary injunction and respectfully request this Court to deny the motion.

Dated:  January 29, 2007                    Respectfully submitted,

                                            **s/ David C. Gibbs III**
                                            David C. Gibbs III (FBN 0992062)
                                            dgibbs@gibbsfirm.com
                                            Barbara J. Weller (FBN 00058513)
                                            bweller@gibbsfirm.com
                                            GIBBS LAW FIRM, P.A.
                                            5666 Seminole Blvd., Ste. 2
                                            Seminole, FL 33772
                                            Telephone:   727-399-8300
                                            Facsimile:   727-398-3907

                                            ATTORNEYS FOR DEFENDANTS


                        CERTIFICATE OF SERVICE

       I hereby certify that on January 29, 2007, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record identified on the attached Service List via transmission of

Notices of Electronic Filing generated by CM/ECF.


                                            **s/ David C. Gibbs III**
                                            David C. Gibbs III

**SERVICE LIST**

*Gay-Straight Alliance of Okeechobee High School and Yasmin Gonzalez*
*v. School Board of Okeechobee County and Toni Wiersma,*
Case No. 06-14320-CIV-MOORE/LYNCH
United States District Court, Southern District of Florida

Robert F. Rosenwald, Jr.
Randall C. Marshall
American Civil Liberties Union Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, Floria 33137
Tel: 786-363-2713
Fax: 786-363-1392
Email: RRosenwald@aclufl.org
Email: RMarshall@aclufl.org


**s/ David C. Gibbs III**
Attorney