UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14320-CIV-MOORE/LYNCH

GAY-STRAIGHT ALLIANCE OF
OKEECHOBEE HIGH SCHOOL, an unincorporated
association and YASMIN GONZALEZ, through her
parent and next friend FRANKIE MICHELLE
GONZALEZ,

       Plaintiffs,
vs.

SCHOOL BOARD OF OKEECHOBEE COUNTY
and TONI WIERSMA, individually and in her official
capacity as principal of Okeechobee High School,

       Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE came before the Court upon Plaintiffs' Motion for Preliminary Injunction (DE # 12). Defendants filed a Response (DE # 19). Plaintiffs filed a Reply (DE # 25).

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

Plaintiff Gay-Straight Alliance of Okeechobee High School ("OHS GSA") is an unincorporated, voluntary association of students who attend Okeechobee High School ("OHS"). (1st Am. Compl. ¶ 6.) Plaintiff Yasmin Gonzalez ("Gonzalez," and, together with GSA, "Plaintiffs") is a student at OHS in her senior year and the president of the GSA, who sues by her parent and next friend, Plaintiff Frankie Michelle Gonzalez. Id. ¶ 8. Defendant School Board of Okeechobee County ("SBOC" or "Defendant") operates OHS and is a public entity subject to suit pursuant to Fla. Stat. § 1001.41(4). Id. ¶ 9. Former Defendant Toni Wiersma ("Wiersma")

is the principal of OHS and her approval is required for OHS recognition of the GSA. Id. ¶ 10. Plaintiffs originally named Toni Wiersma as a defendant, but in a hearing on February 28, 2007, they agreed to withdraw their claims against her. Plaintiffs sought official recognition of the GSA as an OHS school club and access to OHS on an equal basis with other student groups. Id. ¶ 13. Plaintiffs found a teacher to serve as faculty advisor and subsequently sought Wiersma's approval. Id. The GSA's originally stated purposes include, inter alia "promot[ion of] tolerance and equality among students, regardless of sexual orientation and/or gender identities through awareness building and education," "[t]o create a safe respectful learning environment [sic] for all students," and "[t]o work together with administration and other school clubs to end prejudice and harassment in school functions." Id., Ex. A. Plaintiffs complied with all requirements, rules, and procedures to gain access and recognition for a club at OHS. Id. ¶ 14. Wiersma delayed making any decision concerning Plaintiffs' request for several weeks. Id. ¶ 16. Gonzalez and several other students then presented Wiersma with a document outlining the purposes of the GSA and later ratified a constitution for the GSA. Id. ¶¶ 17–18.

On October 12, 2006, Wiersma refused to grant recognition of the GSA and denied it access to OHS on an equal basis with other non-curricular school clubs. Id. ¶ 19. OHS has permitted and continues to permit numerous non-curricular clubs to meet on school grounds during non-instructional time and to use school facilities. Id. ¶ 25. Plaintiffs initiated this action and seek injunctive relief, a declaratory judgment, and nominal damages not to exceed twenty dollars ($20.00).

Plaintiffs argue in their Motion for Preliminary Injunction that, because Defendant has denied the OHS GSA official recognition, access, and privileges granted other non-curricular

clubs, they are entitled to a preliminary injunction enforcing the Equal Access Act ("EAA"). Defendant argues that its actions fall under one or more of the safe harbor exceptions of the EAA because they are meant to maintain "order and discipline on school premises" and to "protect the well-being of students."

## II. LEGAL STANDARD

### Standard of Review for Preliminary Injunctions

A district court may issue a preliminary injunction where the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to each of the four prerequisites. McDonald's Corp., 147 F.3d at 1306 (internal citations and quotations omitted).

## III. ANALYSIS

### A. Applicability of the EAA

The EAA applies only to (1) public secondary schools which receive Federal financial assistance and (2) have a limited open forum. 20 U.S.C.A. § 4071(a). Defendant stated in its Response to the Motion for Preliminary Injunction that, for the purposes of this matter, it does not dispute that (1) OHS is a public school that receives federal funds, and (2) it has opened a limited open forum. Def. Resp. at 5–6. In effect, Defendant SBOC has stipulated, for this

matter, that the EAA applies.

**B. Substantial Likelihood of Success Under EAA**

The EAA prohibits covered schools from "deny[ing] equal access or a fair opportunity to, or discriminat[ing] against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C.A. § 4071(a). Congress enacted the EAA in 1984 to "counteract perceived discrimination against religious speech in public schools and overturn two appellate court decisions that had held that allowing student religious groups to meet on campus . . . would violate the Establishment Clause." Colin v. Orange Unified Sch. Dist., 83 F. Supp. 2d 1135, 1142 (C.D. Cal. 2000).

In situations where obscene and explicit sexual material is not at issue, most jurisdictions have held that, in a limited open forum, the EAA requires schools to grant clubs similar to the OHS GSA the recognition, access, and privileges enjoyed by other clubs at the school. Straights and Gays for Equality (SAGE) v. Osseo Area Schs. Dist. No. 279, 471 F.3d 908 (8th Cir. 2006) (the Eighth Circuit affirmed the district court in granting plaintiffs a preliminary injunction under EAA); White County High Sch. Peers Rising in Diverse Education v. White County Sch. Dist., 2006 WL 1991990 (N.D. Ga. 2006) (granting a gay-straight alliance club a preliminary injunction after the court found that the school was a limited open forum under the EAA); Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ., 258 F. Supp. 2d 667 (E.D. Ky. 2003) (granting a gay-straight alliance club a preliminary injunction based on an EAA claim); Colin v. Orange Unified Sch. Dist., 83 F. Supp. 2d 1135 (C.D. Cal. 2000) (granting a gay-straight alliance club a preliminary injunction based on an EAA claim); E. High Gay/Straight Alliance v.

Bd. of Educ., 81 F. Supp. 2d 1166 (D. Utah 1999) (granting a gay-straight alliance club summary judgment for the time that the school was a limited open forum under the EAA).

In its Response, Defendant does not dispute that it has denied the OHS GSA official recognition, privileges, and access granted other clubs at the school. Instead, Defendant argues that its actions fall under one or more of the safe harbor exceptions to the mandate of the EAA and the school is therefore not required to recognize the OHS GSA nor grant it the same privileges and access granted to other non-curricular clubs at the school. Def. Resp. at 10–15.

The EAA identifies some safe harbor exceptions when it states that the Act shall not be "construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary." 20 U.S.C.A. § 4071(f). Defendant argues that its actions with regard to the OHS GSA fall under the first two of these (i.e., (1) that their "policy of prohibiting student-initiated sex-based clubs" is meant to maintain order and discipline on school premises, and (2) that they "prohibit sex-based clubs" to protect the well-being of students and faculty). Def. Resp. at 10–15.

Defendant argues that it can refuse to officially recognize the OHS GSA because it is a "sex-based club" and courts have held that a school can restrict sexual material in a public school with children, and allowing such would be contrary to the well-being of students and would disrupt order and discipline on the school premises. Def. Resp. at 9–15. Defendant relies on Caudillo v. Lubbock Independent Sch. Dist., which held that a school could deny a Gay and Proud club's application based on the fact that the club's website included links to websites with "obscene and explicit sexual" material and that their stated goal of educating students in safe sex

5

directly interfered with the school's "abstinence only" policy. 311 F. Supp. 2d 550, 564 (N.D. Tex. 2004). Defendant points to non-EAA cases as well. In Bethel Sch. Dist. v. Fraser, the Supreme Court recognized that a school could place "limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." 478 U.S. 675, 684 (1986). In Pyle v. South Hadley Sch. Comm., the court held that a school could prohibit students from wearing shirts with sexually suggestive slogans. 861 F. Supp. 157, 170 (D. Mass. 1994). In Trachtman v. Anker, the Second Circuit held that a school could prohibit a student from distributing a questionnaire to students that included questions which "'requir[ed] rather personal and frank information about the student's sexual attitudes, preferences, knowledge and experience,' [and] covered such topics as pre-marital sex, contraception, homosexuality, masturbation and the extent of student's 'sexual experience.'" 563 F.2d 512, 515 (2nd Cir. 1977).

This Court agrees with the proposition of the above cases that in public schools with students under the age of 18, the school may restrict access to and expression of obscene and explicit sexual material and innuendo. However, this Court is not persuaded that this proposition applies to the present situation. Each of the cases cited above involved protecting underage students from exposure to obscene or explicit sexual information or innuendo. In this case, Plaintiffs repeatedly deny that the OHS GSA is a "sex-based" club, and assert that instead, the club's purposes are "to provide a safe, supportive environment for students and to promote tolerance and acceptance of one another, regardless of sexual orientation." Pl. Reply. at 1–2; Pl. Mot. at 26–27. Plaintiffs further assert that "the OHS GSA does not discuss sex, let alone promote sexual activity." Pl. Reply at 3. Defendant offers no evidence to refute Plaintiffs'

assertions or show that the OHS GSA would be involved with accessing or sharing with other students obscene or explicit sexual material; rather, this appears to be an assumption or conclusion derived from the name of the club. While this Court agrees that sharing obscene or explicit sexual material with children under the age of 18 would be contrary to the well-being of students, this Court has been given no reason to believe that the OHS GSA will not dedicate itself to the purposes, such as tolerance, that it has outlined without involving obscene or explicit sexual material.

Defendant also argues that it can refuse to officially recognize the OHS GSA because allowing any sex-based club official recognition and privileges would interfere with Florida's and the school's abstinence based sex education curriculum, and this would be contrary to the well-being of students and would disrupt order and discipline on school premises. Def. Resp. at 9–15. Defendant again relies on Caudillo v. Lubbock Independent Sch. Dist., which held that the defendant could refuse recognition of the Gay and Proud club of that case based in part on the State and school's abstinence-based curriculum. Caudillo, 311 F. Supp. 2d at 564. The Gay and Proud club of the Caudillo case had stated that one of its official goals was to "[e]ducate willing youth about safe sex[.]" Caudillo, 311 F. Supp. 2d at 556. The court in that case held that the goal of the club to educate students about sex conflicted with the valid abstinence based curriculum of the school. Caudillo, 311 F. Supp. 2d at 564.

The parties in this case dispute neither the existence nor the validity of the abstinence based policies of the State of Florida and OHS. However, the Defendant believes that recognition of the OHS GSA would conflict with the abstinence based policy and curriculum. Def. Resp. at 11, 14–15. Plaintiffs argue that the club does not conflict with Florida's or OHS's

abstinence education policies and assert that "the OHS GSA does not discuss sex, let alone promote sexual activity." Pl. Reply at 3. Again, Defendant's arguments are mainly conclusory and do not offer any clear reason to believe that the OHS GSA would hinder the teaching of the benefits of abstinence at the school. In fact, there is no apparent reason why the OHS GSA might not be an advocate for abstinence in the school. Caudillo is distinguishable because the club in that case had a stated goal of teaching safe sex to students. Caudillo, 311 F. Supp. 2d at 556.

Defendant also argues that granting the OHS GSA official recognition and all privileges allowed other clubs, would permit "circumstances under which health and safety problems for students might invite lawsuits [which] are also disruptive to the educational process." Pl. Resp. at 13. Defendant relies again on Caudillo v. Lubbock Independent Sch. Dist., which states that schools "are caught in a conundrum" because plaintiffs across the country have brought "lawsuits seeking to impose liability for harassment based upon sexual orientation," but "if a school denies activities in order to prevent such [harassment and injury], then it faces a suit similar to the instant suit[.]" Caudillo, 311 F. Supp. 2d at 568–69. Again, Caudillo is distinguishable. In the present case, the Plaintiffs state that the official purposes of OHS GSA are the "promot[ion of] tolerance and equality among students, regardless of sexual orientation and/or gender identities through awareness building and education," "[t]o create a safe respectful learning environment [sic] for all students," and "[t]o work together with administration and other school clubs to end prejudice and harassment in school functions." 1st Am. Compl. Ex. A; Pl. Mot. at 26–27. So the expressed purposes of the OHS GSA are to prevent the very harassment and injury that the court in Claudio was concerned would lead to lawsuits. Also, in

this case, Defendant has questioned whether harassment of homosexual students is a pervasive problem at OHS. Def. Resp. at 3 ("When questioned about the specifics of the instances of harassments, none of the students were able to identify any harassing incidents involving them specifically."). Further, the Court questions how many lawsuits are likely to arise against the school because it has followed an order of this Court.

This Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits of their EAA violation claim. Defendant does not dispute that the EAA applies, nor that it has denied official recognition to the OHS GSA, nor that it has denied the OHS GSA access and privileges granted other non-curricular clubs. And Plaintiffs have demonstrated a substantial likelihood of being able to show that Defendant's actions do not fall into one of the safe harbor exceptions of the EAA.

**C. Irreparable Harm**

Because the EAA protects free speech and expressive liberties, the OHS GSA is entitled to a presumption of irreparable harm if it is not allowed equal access under the EAA. Straights and Gays for Equality (SAGE) v. Osseo Area Schs. Dist. No. 279, 471 F.3d 908, 913 (8th Cir. 2006) (gay straight club was "entitled to a presumption of irreparable harm" because the school likely violated the EAA.); White County High Sch. Peers Rising in Diverse Education v. White County Sch. Dist., No. 06-CV-29-WCO, 2006 WL 1991990, at *13 (N.D. Ga. 2006) (recognizing that a "presumption of irreparable harm has been applied in cases of violations of the EAA" and stating that "the court easily concludes that plaintiffs will be irreparably injured absent an injunction."); Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ., 258 F. Supp. 2d 667, 692 (E.D. Ky. 2003) (recognizing that a "presumption of irreparable harm has

9

been applied in cases of violations of the Equal Access Act" because it protects "expressive liberties" and holding that, without a preliminary injunction, students graduating before resolution on the merits would be irreparably harmed.); Colin v. Orange Unified Sch. Dist., 83 F. Supp. 2d 1135, 1149–50 (C.D. Cal. 2000) (recognizing that a "presumption of irreparable harm arises in the case of violations of the Equal Access Act" and holding that, without a preliminary injunction, students graduating before resolution on the merits would be irreparably harmed.).

Defendant argues that Plaintiffs have not shown irreparable harm because Defendant has already "offered to permit the plaintiffs and any other students who wish to join them to discuss issues of harassment and intolerance with the school guidance counselor." Def. Resp. at 15. But the EAA mandates that a club must be allowed access equal to that granted to other clubs, not merely the opportunity to discuss issues with a school guidance counselor. In this case, the end of the school year is approaching and seniors at OHS who desire equal access and recognition of the OHS GSA at the school will graduate prior to resolution on the merits. Students will be irreparably harmed, as in the cases above, if they are not allowed equal access under the EAA before the end of the school year.

### D. Balance of Hardships

The balance of hardships favors the Plaintiffs. Compliance with a preliminary injunction will require only that the Defendant recognize the OHS GSA and grant it the same access and privileges it already grants many other clubs. Defendant's assertion that "injury could result to the school from potential lawsuits that might arise if student health and safety is compromised by permitting a sex-based club to form at the school" is unsubstantiated and unpersuasive. Defendant's claim that the "potential risks and dangers that teen sex always presents" weighs

against granting a preliminary injunction in this case is likewise unpersuasive considering Plaintiffs' assertion that the club is not based around sex, and that "the OHS GSA does not discuss sex, let alone promote sexual activity." Pl. Reply at 3.

**E. Injunction Would not be Adverse to the Public Interest**

A preliminary injunction would not be adverse to the public interest; rather, as recognized in similar cases in other jurisdictions, it would ensure compliance with federal law and help protect valued constitutional expressive liberties. See White County, 2006 WL 1991990, at *13; Boyd County, 258 F. Supp. 2d at 692–93; Colin, 83 F. Supp. 2d at 1150–51.

## IV. CONCLUSION

Because there is no dispute between the parties for purposes of this Motion as to the applicability of the EAA or as to the fact that Defendant has refused to officially recognize the OHS GSA and grant it the same access and privileges that the school has chosen to grant other non-curricular clubs, and because this Court believes that the factors to be considered in granting a preliminary injunction weigh in favor of the Plaintiffs, this Court holds that a preliminary injunction would be appropriate under these circumstances.

For the reasons set forth above, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Preliminary Injunction (DE # 12) is GRANTED. It is further

ORDERED AND ADJUDGED that the Defendant shall, so long as it maintains a limited open forum under the EAA, grant official recognition and grant all privileges given to other clubs at the school to the Okeechobee High School Gay-Straight Alliance club. It is further

ORDERED AND ADJUDGED that because there is little risk of monetary loss to

Defendant by granting the injunction, and Plaintiffs have demonstrated a substantial likelihood of success on their EAA claim, the Court WAIVES the security requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure.

DONE AND ORDERED in Chambers at Miami, Florida, this 6th day of April, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record
U.S. Magistrate Judge Frank J. Lynch