UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 06-14320-Civ-Moore/Lynch

GAY-STRAIGHT ALLIANCE OF            )
OKEECHOBEE HIGH SCHOOL, an          )
unincorporated association and YASMIN )
GONZALEZ,                           )
                                    )
                Plaintiffs,         )
                                    )
        vs.                         )
                                    )
SCHOOL BOARD OF OKEECHOBEE          )
COUNTY,                             )
                                    )
                Defendant.          )
                                    )
_____

**DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

The Defendant, SCHOOL BOARD OF OKEECHOBEE COUNTY, by and through its

undersigned counsel, respectfully moves this Court for an order granting final summary

judgment against the Plaintiffs, GAY STRAIGHT ALLIANCE OF OKEECHOBEE HIGH

SCHOOL and YASMIN GONZALEZ, pursuant to Federal Rule of Civil Procedure 56(b) and

Local Rules 7.1 and 7.5 of the United States District Court for the Southern District of Florida.

Summary judgment is proper in this case because there is no genuine issue of material

fact and because Defendant School Board of Okeechobee County is entitled to judgment as a

matter of law.  Specifically, the undisputed facts developed through the pleadings and discovery

in this case demonstrate that the Defendant legitimately exercised the authority granted it under

the second exception to the Federal Equal Access Act and current case law when it determined

that allowing the formation of a Gay Straight Alliance at Okeechobee High School would not

protect the well-being of students at Okeechobee High School.  Based upon the following facts, arguments, and authorities contained in the Memorandum of Law and Statement of Undisputed Material Facts filed contemporaneously herewith, the Defendant respectfully moves this Court to grant its motion for final summary judgment.

## I. BACKGROUND

This is a case in which Plaintiffs, the Gay Straight Alliance of Okeechobee High School, an unincorporated association, and Yasmin Gonzalez, now a graduate of Okeechobee High School, sued the School Board of Okeechobee for denying their application to start a student-initiated, sex-based student club during non-instructional time.   The Plaintiffs claim that Defendants' denial of approval for their club violates the Federal Equal Access Act, 20 U.S.C. §4071 ("EAA"), 42 U.S.C. §1983, and their First Amendment Free Speech rights.

The issue presented to this court – which is an issue of first impression – is whether, under the second exception to the Federal Equal Access Act ("to protect the well-being of students and faculty"), now supported by current U.S. Supreme Court and United States Court of Appeals for the Eleventh Circuit precedent, school officials who have made a determination based upon their professional experience, research and consideration of parental concerns have the authority to limit student expression which they have determined will not protect the well-being of their students.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### Parties and General Facts

1.      The Gay Straight Alliance of Okeechobee County ("Okeechobee GSA") is an unincorporated voluntary association of students who attend Okeechobee High School ("OHS"). (First Amended Complaint ¶ 6).

2.      Yasmin Gonzalez ("Plaintiff Gonzalez") was president of the Okeechobee GSA and a senior at OHS at the commencement of this action and has since graduated.  (Defendant's Response to Motion for Continuance p. 1).

3.      Jessica Donaldson is a senior at OHS and the current president of the Okeechobee GSA. (Declaration of Jessica Donaldson, ¶ 2).

4.      Defendant School Board of Okeechobee County ("SBOC") is a public entity formed under Florida Statute § 1001.30 and operates OHS. (First Amended Complaint ¶ 9).

5.      Principal Wiersma is the principal of OHS and is responsible for approving student clubs at OHS.  (First Amended Complaint ¶ 10).

6.      Dr. Patricia Cooper ("Dr. Cooper") is the Superintendent of SBOC.  (Exhibit A, Cooper Deposition 78-17).

7.      SBOC is the final decision-making authority regarding the denial of access to student clubs at OHS.  (Exhibit B, Defendant's Response to Plaintiffs' Request for Admission No. 5).

8.      Ms. Wendy Padgett is the Okeechobee GSA club advisor.  (Exhibit C, Affidavit of Wendy Padgett ¶ 2).

9.      In the fall semester of 2006 Plaintiff Gonzalez sought Principal Wiersma's approval to form the Okeechobee GSA student club.  (First Amended Complaint ¶ 13).

**Denial of Access**

10.     After performing research, speaking with Dr. Cooper, and considering the concerns of parents, Principal Wiersma denied access to the Okeechobee GSA based on the following conclusions:

        a)      The Okeechobee GSA would not protect the well-being of students attending OHS (Defendant's Response to Motion for Preliminary Injunction, p. 9);

b)      The Okeechobee GSA would interfere with OHS's abstinence-only curriculum (Defendant's Response to Motion for Preliminary Injunction, p. 9);

c)      The Okeechobee GSA would put students in contact with potentially dangerous outside adult influences (Exhibit D, Defendant's Response to Plaintiffs' First Set of Interrogatories No. 4);

d)      The Okeechobee GSA would promote the unhealthy premature sexualization of its adolescent members  (Exhibit E, Wiersma Deposition 150, 6-12);

e)      The Okeechobee GSA would promote immature adolescents discussing sexual issues among themselves rather than with their parents or with informed, unbiased adults such as trained teachers or guidance counselors (Exhibit E, Wiersma Deposition 149, 10-19);

f)      The Okeechobee GSA would permit high school students to have access to adult-only material (Exhibit E,  Wiersma Deposition 151, 2-5); and

g)      Denying access to the Okeechobee GSA  would maintain the integrity and effectiveness of the school's abstinence program. (Exhibit E, Wiersma Deposition 152, 4-17).

**National Gay Straight Alliance Organization**

11.    The Gay Lesbian and Straight Education Network ("GLSEN") is a national organization that registers, educates and provides information to Gay Straight Alliance ("GSA") clubs. (Exhibit F, Plaintiffs Gay Straight Alliance of Okeechobee High School's Response to Defendant's First Request for Production of Documents, pp. 14, 15).

12.    GLSEN provides information on:

a)      Starting a GSA club at public high schools (Exhibit F, pp. 14, 15);

b)      Educating students, teachers and school administrators on gay, lesbian, bisexual and transgender issues (Exhibit F, pp. 14, 15);

c)      Topics of discussion for GSA meetings (Exhibit F, p. 15);

d)      Creating youth-adult partnerships (Exhibit F, pp. 242 – 256); and

e)      Making student clubs inclusive for transgender people (Exhibit F, pp. 257 – 271);

13.     GLSEN promotes the networking of GSA clubs across the nation to share resources and information. (Exhibit F, p. 14).

14.     Gay Straight Alliance clubs nationwide register with GLSEN and are encouraged to communicate with each other (Exhibit F, pp. 14, 97 – 105).

15.     Some of these GSA clubs link to adult pornographic material on their school club websites. (Exhibit G, Defendant's Responses to Plaintiff's First Set of Request for Productions No. 19 and Exhibit F, p. 99).

16.     Events promoted by GSA clubs nationwide and the Okeechobee GSA (i.e. Ally Week and Day of Silence) are sponsored by GLSEN (Exhibit F, pp. 307, 316, 322).

17.     The Okeechobee GSA has received informational material from GLSEN on how to run club meetings and what subject matters to discuss at club meetings, in addition to flyers and posters to hang on school grounds during club sponsored events. (Exhibit F, pp. 257 – 271, 317, 318, 327).

**Sex-Based Clubs**

18.     The School Board of Okeechobee County Board Policy Section 4.30(II)(D) Student Clubs and Organizations states:

> To assure that student clubs and organizations do not interfere with the School Board's abstinence only sex education policy and the School Board's obligation to promote the well-being of all students, no club or organization which is sex-based or based upon

any sexual grouping, orientation, or activity of any kind shall be permitted. (Exhibit K).

19.     The School Board of Okeechobee County Board Policy Section 4.30(II)(J) states, "A student club or organization shall not conduct any activity or act which violates Florida Statutes, School Board rules, or the policies of the local school."  (Exhibit K).

20.     The first stated primary purpose of the Okeechobee GSA's by-laws is "to promote tolerance and equality among students of all *sexual orientations and gender identities* through educational efforts and awareness building."  (emphasis added) (Exhibit F, p. 1).

21.     The second stated purpose of the Okeechobee GSA's by-laws is "to inform members and the student body of issues and events effecting the lives of lesbian, gay, bisexual, trangender, and straight ally youth."  (Exhibit F, p. 1).

22.     The fifth stated purpose of the Okeechobee GSA's by-laws in "to create a safe, welcoming space for LGBT and Straight Ally students to socialize and talk together about issues they hold in common."  (Exhibit F, p. 1).

23.     In informational material provided to the Okeechobee GSA by GLSEN, the definition of "sexual orientation" is "one's *mental, physical and emotional attraction* to people of one or more genders, *and subsequent interest in physical relationships* or establishing long-term relationships with select people of that/those gender(s)."  (emphasis added) (Exhibit F, p. 263).

24.     In informational material provided to the Okeechobee GSA by GLSEN, the definition of "gender identity" is "an individual's self-perception or inner sense of being a man, a male, a woman, a female, both, neither, butch, femme, two-spirit, bigender or another configuration of gender.  Gender identity often matches with one's physical anatomy but sometimes does not." (Exhibit F, p. 262).

25.     The Okeechobee GSA is instructed by GLSEN to promote discussion among adolescents

of sexual topics such as how transgender individuals have sex and what a transgender individual's genitalia look like. (Exhibit F, p. 264).

26.     Following this Court's issuance of its preliminary injunction order, members of the Okeechobee GSA have attempted to discuss sexual topics at meetings but were stopped by the club advisor, Ms. Padgett.  (Exhibit E, Wiersma Deposition 102, 7 – 17; Exhibit M, Padgett Deposition, 82,1 – 83, 25 and 87,1 – 88,25).

<strong>Outside Adult Involvement</strong>

27.     In the fall of 2006, Eric McCool, an adult male living in Chicago, contacted Plaintiff Gonzalez regarding the formation of the Okeechobee GSA. (Exhibit H, Plaintiff Yasmin Gonzalez's Response to Defendant's First Request for Production of Documents No. 4, p. 306).

28.     In addition to exchanges of email, Mr. McCool set up face-to-face meetings outside of school with Plaintiff Gonzalez.  (Exhibit H, p. 294).

29.     Mr. McCool designed the Okeechobee GSA website in the Fall of 2006 using an unauthorized OHS logo.  (Exhibit E, Wiersma Deposition 78, 23 – 25 and 79, 1 – 4).

30.     Mr. McCool continues to run the Okeechobee GSA website posting club information without the knowledge or approval of the current club president, Ms. Donaldson, or the club advisor, Wendy Padgett.  (Exhibit I, Plaintiff Gay Straight Alliance of Okeechobee High School's Response to Defendant's First Interrogatories No. 3; Exhibit L, Deposition of Jessica Donaldson, 30,17 – 34, 25).

31.     The Okeechobee GSA has held off-campus club meetings not sponsored by OHS with outside adults present.  (Exhibit I, Plaintiff Gay Straight Alliance of Okeechobee High School's Response to Defendant's First Interrogatories No. 5).

32.     The threat of potential adult predators having the opportunity to interact with students in

a sex-based club such as the Okeechobee GSA is a concern of parents and school officials. (Exhibit E, Wiersma Deposition 154, 9-15) (Exhibit J, Walker Deposition 37, 23-25 and 38, 1-5).

33.     In addition to this current outside adult involvement with the Okeechobee GSA, GLSEN provides GSA clubs nationwide and has provided the Okeechobee GSA with instructions on how to form undefined relationships with adults outside the school community.  (Exhibit F pp. 242 – 256).

## III. DISCUSSION AND MEMORANDUM OF LAW

In order to succeed on its motion for summary judgment, Defendant School Board of Okeechobee County must show that (1) there are no genuine issues of material fact, and (2) it is entitled to judgment as a matter of law.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990); *Mercantile Bank and Trust Co., Ltd. v. Fidelity and Deposit Co.,* 750 F.2d 838, 841 (11th Cir. 1984); *Roy v. Amoco Oil Co.,* 747 F. Supp. 661, 663 (S.D. Fla. 1990).  The standards for evaluating a motion for summary judgment are set forth in Rule 56 of the Federal Rules of Civil Procedure.   Rule 56(c) states that a party's motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Roy v. Amoco Oil Co.,* 747 F. Supp. 661, 663 (S.D. Fla. 1990).  Thus, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Although the Court should view the evidence in a light most favorable to the party opposing summary judgment when evaluating the facts, "[o]nly disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Robinson v. Adventist Health System*, 2007 U.S. App. LEXIS 29382, (11th Cir. 2007) *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court).

Once a proper motion has been made, the non-moving party must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322-23, *Anderson*, 477 U.S. at 257. The non-moving party may not simply rest on the pleadings alone. *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must produce "specific evidence showing that there is a genuine dispute as to material issues." *Anderson*, 477 U.S. at 249; Fed. R. Civ. P. 56(e). The non-movant has failed to meet this standard if its response merely shows that "there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

As demonstrated below, the Defendant has satisfied all the requirements for summary judgment and its motion should therefore be granted.

**Argument**

Since this Court issued its preliminary injunction order in this case, three significant events have occurred that provide a solid basis for granting the Defendant's motion for summary judgment.

First, both the United States Supreme Court and, subsequently, the United States Court of Appeals for the Eleventh Circuit, have issued decisions recognizing the authority of school

officials to appropriately limit student expression in areas such as drugs and violence, which according to their judgment, affect student well-being.  The Supreme Court previously issued several decisions in which the Justices recognized the authority of school officials to limit student expression in areas regarding sex and profanity.   This authority to limit student expression is also granted in the exceptions to the Equal Access Act.

Second, on October 9, 2007, the Defendant SBOC, formulated and enacted a written policy pertaining to student expression regarding issues of sexuality.  The School Board of Okeechobee County Board Policy Section 4.30(d) Student Clubs and Organizations states:

> To assure that student clubs and organizations do not interfere with the School Board's abstinence only sex education policy and the School Board's obligation to promote the well-being of all students, no club or organization which is sex-based or based upon any sexual grouping, orientation, or activity of any kind shall be permitted.

Lastly, the facts of this case have been thoroughly developed through the pleadings and discovery. In that process, several of the concerns that motivated the school's initial denial of the club have in fact materialized and, in these officials' opinion, continue to threaten the well-being of the students in their care.

Under the Federal Equal Access Act and current U.S. Supreme Court and U.S. Court of Appeals for the Eleventh Circuit case precedent, the Defendant, SBOC, has the authority to limit student speech by denying access to student clubs if they determine the student club would not protect the well-being of students.  The Federal Equal Access Act ("EAA") provides in pertinent part:

> It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or

other content of the speech at such meetings.

20 U.S.C. §4071 (a).  Despite this broad mandate that student clubs be allowed to form, the EAA specifically includes three exceptions which grant schools the authority to limit club formation and activity by providing that

> [n]othing in this subchapter shall be construed to limit the authority of the school, its agents or employees, [1] to maintain order and discipline on school premises, [2] to protect the well-being of students and faculty, and [3] to assure that attendance of students at meetings is voluntary.

(emphasis added) 20 U.S.C. §4071 (f).

The Defendant exercised its authority granted under the second exception to the EAA by denying the formation of the Okeechobee GSA in order to protect the well-being of its students based on the considerations and concerns listed as undisputed facts *supra*.  One of the Defendant's main concerns was the premature sexualization of adolescent high school students, some as young as fourteen (14), not only through inappropriate sexual discussions at club meetings but also through exposure to pornographic material on other GSA websites registered with GLSEN, a national organization providing informational material to GSAs.  This concern of exposing minors to inappropriate sexual material was shared by this Court in its preliminary injunction order issued on April 6, 2007 (DE # 36), wherein this Court stated:

> While this Court agrees that sharing obscene or explicit sexual material with children under the age of 18 would be contrary to the well-being of students, this Court has been given no reason to believe that the OHS GSA will not dedicate itself to the purposes, such as tolerance, that it has outlined without involving obscene or explicit sexual material.

Prelim. Inj. DE# 36.  This Court narrowly tailored its preliminary injunction to assure itself that its concerns were addressed, limiting the club's topics of discussion to the those dealing with bullying and harassment.  As a result, the Defendant has permitted the club to meet, despite little

11

or no attendance, under this Court's injunctive order with instructions to the club advisor, Ms. Padgett, to bar discussions of sexual topics.

During the Okeechobee GSA's formation, the student club communicated with and received informational material from the Gay Lesbian and Straight Education Network (GLSEN). This organization provides student clubs with material to help in forming clubs and running club meetings, including discussion topics and activities for clubs to hold throughout the school year. In information provided to the Okeechobee GSA by GLSEN, students are encouraged, *inter alia*, to discuss at club meetings how transgendered individuals have sex and what their genitalia look like. Not only have Okeechobee GSA members been exposed to sexually explicit material from GLSEN, they themselves have attempted to discuss banned topics at Okeechobee GSA club meetings (i.e. sexual orientation, one's physical and emotional attraction to people of one or more genders, and subsequent interest in physical relationships); however, these discussions were promptly stopped by the club advisor in compliance with this Court's preliminary injunction order.

The Plaintiffs in this case initially told this Court that the Okeechobee GSA "is about promoting tolerance and a welcoming environment for all students regardless of sexual orientation – not discussing or promoting sexual activity or providing access to sexually explicit material" (Plaintiffs' Reply in Support of Motion for Prelim. Inj. p. 1) However, had the club not been limited by this Court's preliminary injunction order, students attending an Okeechobee GSA meeting intending to discuss matters of tolerance and harassment could instead have found themselves exposed to a discussion on how transgendered individuals have sex or other sexually explicit topics. These students could have been "seriously damage[ed]" with regard to their sexual development as many high school students are only fourteen (14) years old and on the

"threshold of human sexuality." *Bethel School Dist. No. 403 et al., v. Fraser, et al.*, 478 U.S. 675, 684 (1986).

In addition to these discussions of sex and sexual issues at club meetings, members are also encouraged by GLSEN to share information and to interact with other GSA clubs across the country. In informational material provided to the Okeechobee GSA by GLSEN, there are many references and activities intended to promote open interactions among the various national GSA clubs that are registered through the GLSEN organization. Some of the registered GLSEN GSA clubs provide links on their websites to pornographic and sexually explicit material.

This sexually explicit interaction in and among high school GSA clubs is not speech that is protected by the First Amendment in the public school setting. Although the United States Supreme Court made clear in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969), that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," the Court has gone on to reserve the right of school officials to limit this speech in areas such as drugs, violence and sex.

In the Supreme Court's decision in the case of *Hazelwood School Dist., et al., v. Kuhlmeier, et al.*, a public high school principal removed two articles from an upcoming school newspaper publication based on privacy concerns and the belief that "the article's reference to sexual activity and birth control were inappropriate for some of the younger students at the school." *Hazelwood*, 484 U.S. 260, 263 (1988). In evaluating the students' claim that the removal of articles from the school newspaper constituted a violation of their First Amendment rights, the Court first summarized the standards to be applied in this context. First, the Court recognized that "the *First Amendment* rights of students in the public schools 'are not automatically coextensive with the rights of adults in other settings' and must be 'applied in light

13

of the special characteristics of the school environment.'"  *Id.* citing *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) and *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 511 (1969).  In accordance with this principle, the Court went on to note its decision in *Bethel* "that a student could be disciplined for having delivered a speech that was 'sexually explicit' but not legally obscene at an official school assembly, because the school was entitled to 'disassociate itself' from the speech in a manner that would demonstrate to others that such vulgarity is 'wholly inconsistent' with the 'fundamental values' of public school education." *Hazelwood* 484 U.S. at 267, citing *Bethel School Dist., v. Fraser*, 478 U.S. 675, 683 (1969).  Lastly, the Supreme Court noted it has consistently recognized that "the determination of what manner of speech in the classroom or in school assembly is inappropriate properly rest with the school board," rather than with the courts. *Id.*

Applying these principles from *Fraser*, the Court in *Hazelwood* found the school did not violate the students' First Amendment rights in editing sexual content from the school newspaper.  In fact, the Court held that schools "*must* be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics, which might range from the existence of Santa Claus in an elementary school setting to the particulars of *teenage sexual activity in a high school setting*.  A school *must* also retain the authority to refuse to sponsor student speech that might reasonably be perceived to advocate drug or alcohol use, *irresponsible sex*, or conduct otherwise inconsistent with the 'the shared values of a civilized social order.'" (emphasis added) *Hazelwood* 484 U.S. at 272 citing *Bethel School Dist., v. Fraser*, 478 U.S. 675, 683 (1969).  "Otherwise, the schools would be unduly constrained from fulfilling their role as 'a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to

14

adjust normally to his environment.'" *Hazelwood* 484 U.S. at 272 citing *Brown v. Board of Education*, 347 U.S. 483, 493 (1954). To this end, the Supreme Court found that based on the newspaper articles' reference to students' sexual histories and use or nonuse of birth control, it was not "unreasonable for the principal to have concluded that such frank talk was inappropriate in a school-sponsored publication distributed to 14-year-old freshmen and presumably taken home to be read by students' even younger brothers and sisters." *Hazelwood* 484 U.S. at 274-275.

The United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit have recently reaffirmed and extended the authority of school officials to limit student speech involving sex, drugs and violence to school contexts beyond classrooms and school assemblies. In *Deborah Morse, et al. v. Frederick*, 125 S. Ct. 2618 (2007), the Supreme Court upheld a principal's decision to reprimand a student for unfurling a banner promoting illegal drug use at a school-sanctioned, school-supervised event. In so holding the Court noted the "'special characteristics of the school environment' and the governmental interest in stopping student drug abuse – reflected in the policies of Congress and myriad school boards, including JDHS – allow schools to restrict student expression that they reasonably regard as promoting illegal drug use." *Id*. at 2629 citing *Tinker, et al. v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506 (1969).

Shortly after *Morse*, the Eleventh Circuit upheld a district court's grant of summary judgment in favor of the defendant in the case of *Boim v. Fulton County Sch. Dist.*, 494 F.3d 978, 982 (11th Cir. 2007), holding that "school officials '*must* have the flexibility to control the tenor and contours of student speech within school walls or school property, even if such speech does not result in a reasonable fear of immediate disruption.'" (emphasis added) (citing *Scott v. Sch.*

15

*Bd. of Alachua County*, 324 F.3d 1246, 1248 (11th Cir. 2003).)  The *Boim* court went on to extend the principles set forth in the *Morse* case to issues of school violence noting "'[a]lthough public school students' *First Amendment* rights are not forfeited at the school door, those rights should not interfere with a school administration's professional observation that certain expressions have led to, and therefore could lead to, an unhealthy and potentially unsafe learning environment for the children they serve.'" *Boim* 494 F. 3d at 983 citing *Scott* 324 F.3d at 1247. The Court further stated "'[s]hort of a constitutional violation based on a school administrator's unsubstantiated infringement on a student's speech or other expressions, this Court will not interfere with the administration of a school.'" *Id.*

In *Boim*, the appellate court concluded that the school did not violate the student's First Amendment rights.  Relying on the Supreme Court's decision in *Morse*, the Eleventh Circuit looked to the current state of the school environment and the increase of incidents such as violence and drug abuse on school property and noted:

> We can only imagine what would have happened if the school officials, after learning of Rachel's writing, did nothing about it and the next day Rachel did in fact come to school with a gun and shoot and kill her math teacher.  In our view, it is imperative that school officials have the discretion and authority to deal with incidents like the one they faced in this case. Recently, in *Morse*, the Supreme Court broadly held that "[t]he special characteristics of the school environment and the governmental interest in stopping student drug abuse . . . allow school to restrict student expression that they reasonably regard as promoting illegal drug use." 551 U.S.  , 127 S. Ct. 2618, 2629, 168 L.Ed. 2d 290, 303 (quotations and citation omitted).  That same rationale applies equally, if not more strongly, to speech reasonably construed as a threat of school violence.

*Boim* 494 F.3d at 984.

This same rationale should be applied to the premature sexualization of adolescent high school students, whether sexually explicit discussions take place in class, in school assemblies,

or as part of extracurricular clubs.  The United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the United States Congress have all articulated a need to deter illegal drug use by adolescents and protect them from violence.  These governmental bodies have also articulated a need to protect students from sexually explicit material and premature sexualization – warranting the extension of *Morse* and *Boim* to the case at bar.  *See, e.g., Bethel School Dist. No. 403, et al. v. Fraser, et al.*, 478 U.S. 675, 684 (1986); *Hazelwood*, 484 U.S. 260 (1988); *Ginsberg v. New York*, 390 U.S. 629 (1968) (upholding a New York statute prohibiting the sale of sexually oriented material to adolescents).

In addition to this line of cases establishing judicial recognition of the authority of school officials to restrict student speech to protect them from premature sexualization, the U.S. Congress has also established its intent to continue to authorize school officials with discretion to restrict student speech relating to issues of sexuality in order to protect their well-being.  First, Congress provided exceptions to the Equal Access Act to clearly leave with school administrators the authority to decide what student speech would interfere with the well-being of students (20 U.S.C. §4071(f)).  Furthermore, in 1996 Congress established the State Abstinence Education Program ("SAEP") which provides grants to states offering an abstinence education program which:

> (A)    has as its exclusive purpose, teaching the social, psychological, and health gains to be realized by abstaining from sexual activity;
> (B)    teaches abstinence from sexual activity outside marriage as the expected standard for all school age children;
> (C)    teaches that abstinence from sexual activity is the only certain way to avoid out-of-wedlock pregnancy, sexually transmitted diseases, and other associated health problems;
> (D)    teaches that a mutually faithful monogamous relationship in context of marriage is the expected standard of human sexual activity;
> (E)    teaches that sexual activity outside of the context of

marriage is likely to have harmful psychological and physical effects;

(F)     teaches that bearing children out-of-wedlock is likely to have harmful consequences for the child, the child's parents, and society;

(G)     teaches young people how to reject sexual advances and how alcohol and drug use increases vulnerability to sexual advances; and

(H)     teaches the importance of attaining self-sufficiency before engaging in sexual activity.

42 U.S.C. § 710(b)(2). Congress specifically provided that the purpose of allotting federal funding under the SAEP is to enable state programs to "provide abstinence education, and . . . where appropriate, mentoring, counseling, and *adult supervision* to promote abstinence from sexual activity." (emphasis added) 42 U.S.C. § 710(b)(1). Clubs operating under the EAA are intended to be student initiated and student led. Therefore, a GSA club operating at OHS outside the parameters of this Court's preliminary injunction order would be a student led club organized around issues of sexuality that are already highly volatile issues for teens. The Bylaws of the Okeechobee GSA indicate that students do not intend to limit their club to issues of tolerance, bullying and harassment.

The State of Florida has also articulated a governmental interest in protecting children from premature sexualization by mandating that abstinence from sexual activity outside of marriage be taught "as the expected standard for all school-age students while teaching the benefits of monogamous heterosexual marriage . . . [and] a certain way to avoid out-of-wedlock pregnancy, sexually transmitted diseases, including acquired immune deficiency syndrome, and other associated health problems." Fla. Stat. §1003.46 (2)(a) and (b). SBOC enforces this mandate through the School Board of Okeechobee County Board Policies Section 4.10. Discovery in this case has established that potentially harmful speech about sexual issues is intended to be part of student discussion at Okeechobee GSA club meetings.

The case at bar presents the same type of issue that was in controversy in *Fraser*, *Hazelwood*, *Morse*, and *Boim*.  Unsupervised and inappropriate discussions by students of sex, drugs and violence should be prohibited in all areas of public school life.  Just as the principals in *Fraser* and *Hazelwood* were appropriately concerned about student speech involving sex, the principal in *Morse* was appropriately concerned about speech involving drugs, and the principal in *Boim* was appropriately concerned about speech involving violence, the principal at Okeechobee High School, Principal Wiersma, was appropriately concerned about student speech involving sex, which would present the threat of premature sexualization of the children she was in charge of protecting and educating when she denied access to the Okeechobee GSA.  And just as the principals of Bethel High School (*Fraser*), Hazelwood East High School (*Hazelwood*), Juneau-Douglas High School (*Morse*) and Roswell High School (*Boim*), Principal Wiersma reasonably believed that OHS retained the authority to limit student speech in order to protect her students from sexually explicit and inappropriate material.  The Plaintiffs in this case have been unable to establish that the Defendant acted with anything but the well-being of students in mind.  The Plaintiffs are also unable to establish that the Okeechobee GSA, given its connection with GLSEN, its bylaw purposes (B) and (D), *supra*, and its connection with other GSAs registered with GLSEN, will exclude discussion of sexual issues at club meeting, despite this Court's current restriction of club topics to bullying and harassment.

The authority to limit student speech that does not protect the well-being of students is granted not only by the second exception in the EAA, but also by the Supreme Court in *Hazelwood* and *Fraser* with regard to sex, by the Supreme Court in *Morse* with regard to drugs, and by the Eleventh Circuit in *Boim* with regard to violence.  Sex, drugs and violence are all forms of student speech that have the potential to interfere with students' well-being.  Therefore,

school officials have the legitimate authority to limit such speech, a view also expressed by this Court in its preliminary injunction order.  This Court said that based on *Bethel*, *Pyle*, and *Trachtman*, "in public schools with students under the age of 18, the school may restrict access to an expression of obscene and explicit sexual material and innuendo."  Prelim. Inj. DE# 36 (See *Pyle v. South Hadley*, 861 F.Supp. 157, 170 (D. Mass. 1994) holding that a school could prohibit students from wearing shirts with sexually suggestive slogans; *Trachtman v. Anker*, 563 F.2d 512, 515 (2nd Cir. 1977), holding a school could prohibit a student from distributing a questionnaire to students that included questions which "'requir[ed] rather personal and frank information about the student's sexual attitudes, preferences, knowledge and experience,' [and] covered such topics as pre-marital sex, contraception, homosexuality, masturbation and the extent of student's 'sexual experience.'")

Moreover, in light of Congressional and Florida statutes and SBOC policies requiring the teaching of abstinence in public high schools, a sex-based GSA club that uses informational material with sexual content supplied by GLSEN, such as that described in the undisputed facts, *supra*, would not protect the well-being of students.  A concern of Principal Wiersma and SBOC in denying access to the Okeechobee GSA was to maintain the integrity of OHS's abstinence policy.  By allowing student clubs to meet on campus that are encouraged by an outside adult group such as GLSEN to have unrestricted conversations dealing with the act of sex, genitalia and physical attractions, the abstinence education being provided by school personnel is compromised, as is the well-being of students.  Such unfettered peer-to-peer discussion among immature minors is detrimental to children who are continuing to develop sexually and is, thus, injurious to their well-being.

The position of the Defendant in this case, supported by the EAA, case law, discovery

and pleadings in this case, is that in an age in which potential sexual exploitation and molestation pose great risks to minor children, it is wise to be cautious in protecting minor students from the severe and life altering harms that can result from premature sexualization and sexual victimization.  In light of the Defendant's officials' professional training, understanding of the students in their care, and knowledge of the concerns of parents who entrust their children to Okeechobee schools, the Defendant, in this case, was in the best position to evaluate the severity of the risk and the resultant harms which could result from inappropriate sexual relationships, discussions and activity.  The Defendant SBOC, as a body of elected officials, was also in the best position to evaluate the needs of the community it serves with regard to issues of "sexual grouping, orientation, or activity" (SBOC Policy Sec. 4.30(d)) and to determine what student expression around these issues is appropriate for their school.  After considerable research, input from parents and others in the community, and ongoing evaluation of the risks of harm to students of premature sexualization and exploitation, this Defendant made a legitimate and appropriate decision to deny access to the Okeechobee GSA club.

## V. CONCLUSION

The Defendant's well-founded concerns based on the above facts led the Defendant to deny access to the Okeechobee GSA in order to protect the well-being of students under its care, as is permitted by the exceptions to the Equal Access Act and United States Supreme Court and United States Court of Appeals for the Eleventh Circuit case precedent.  The case before this Court has nothing to do with either the promotion or disapproval of a heterosexual or homosexual lifestyle or with discriminating against homosexuals.  The Defendant would deny access to *any* student club that was sex-based and that would permit, perhaps even encourage, inappropriate sexually explicit discussions among students.

As the Supreme Court and the Eleventh Circuit have stated,

> "[t]he special characteristics of the school environment and the governmental interest in stopping student drug abuse . . . allow school to restrict student expression that they reasonably regard as promoting illegal drug use." 551 U.S.  , 127 S. Ct. 2618, 2629, 168 L.Ed. 2d 290, 303 (quotations and citation omitted).  That same rationale applies equally, if not more strongly, to speech reasonably construed as a threat of school violence.

*Boim* 494 F.3d at 984 citing *Morse*.  Extending this analogy for purposes of this case, Principal Wiersma and the Defendant SBOC had the authority to conclude that exposing adolescent students to sexually explicit material would not protect their well-being.  The GLSEN materials provided by the Plaintiffs in discovery, as well as the sexually oriented purposes in the Defendants' own bylaws, demonstrate that OHS will not be able to limit inappropriate discussions of potentially harmful sexual topics at GSA club meetings if the GSA is permitted to meet and to set its own agenda without the limitations in this Court's preliminary injunction order.

As this Court has stated, "sharing obscene or explicit sexual material with children under the age of 18 would be contrary to the well-being of students."  Prelim. Inj. DE# 36.  The Defendant, acting in accordance with this belief, exercised its authority to deny access to the Okeechobee GSA.  Under the Equal Access Act and Supreme Court precedent, the Defendant has the authority to make such a decision in light of its duty to protect the well-being of students under its care.  Therefore, the Defendant is entitled to judgment as a matter of law.  For these reasons, the Defendant respectfully asks the Court to grant the motion and render a final summary judgment in Defendant's favor.

Dated:  January 29, 2008          Respectfully submitted,

**s/ David C. Gibbs III**
David C. Gibbs III (FBN 0992062)
dgibbs@gibbsfirm.com
Barbara J. Weller (FBN 00058513)
bweller@gibbsfirm.com
GIBBS LAW FIRM, P.A.
5666 Seminole Blvd., Ste. 2
Seminole, FL 33772
Telephone:   727-399-8300
Facsimile:   727-398-3907

ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

     I hereby certify that on January 29, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

**s/ David C. Gibbs III**
David C. Gibbs III

**SERVICE LIST**

*Gay-Straight Alliance of Okeechobee High School and Yasmin Gonzalez*
*v. School Board of Okeechobee County,*
Case No. 06-14320-CIV-MOORE/LYNCH
United States District Court, Southern District of Florida

Robert F. Rosenwald, Jr.
Randall C. Marshall
American Civil Liberties Union Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, Floria 33137
Tel: (786) 363-2713
Fax: (786) 363-1392
Email: RRosenwald@aclufl.org
Email: RMarshall@aclufl.org


Kenneth Y. Choe
James D. Esseks
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2627
Fax: (212) 549-2650
Email: kchoe@aclu.org
Email: jesseks@aclu.org

ATTORNEYS FOR PLAINTIFFS