IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14320-CIV-MOORE/LYNCH

YASMIN GONZALEZ, through her
parent and next friend FRANKIE MICHELLE
GONZALEZ, and JESSICA DONALDSON,

        Plaintiffs,

vs.

SCHOOL BOARD OF
OKEECHOBEE COUNTY,

        Defendant.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (dkt # 106), and upon Plaintiffs' Motion for Summary Judgment (dkt # 108).

UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This is an action arising from the inability of the Gay-Straight Alliance of Okeechobee High School ("GSA") to gain official recognition as a noncurricular student group within Okeechobee High School ("OHS"). The students interested in participating in the GSA complied with the requirements to gain access and recognition for a student group at OHS, but Ms. Wiersma, the Principal of OHS, refused to grant such recognition. In a letter to Principal Wiersma, dated October 19, 2006, the students, through counsel, advised Principal Wiersma of their right to receive recognition as a noncurricular student group pursuant to the Equal Access Act ("EAA"), 20 U.S.C. § 4071. However, the School Board of Okeechobee County ("SBOC") did not grant the

GSA recognition.

On November 15, 2006, the GSA and one of its members, Yasmin Gonzalez ("Gonzalez"), filed a Complaint against SBOC (dkt #1) seeking equitable relief and nominal damages. A Preliminary Injunction (dkt # 36) was granted ordering SBOC to recognize the GSA as a noncurricular student group and to afford it all corresponding benefits. Gonzalez graduated after completing the 2006-07 school year. The GSA was subsequently dismissed as a Plaintiff because it no longer had any student members at OHS and the Preliminary Injunction was dissolved (dkt # 79). After graduation, Gonzalez's claim for equitable relief became moot but her claim for damages remained a live controversy. *See* Order Granting Motion to Alter Judgment (dkt # 99). In an Order dated April 8, 2008 (dkt # 92), Jessica Donaldson ("Donaldson"), a member of the GSA during the period giving rise to the claims, was allowed to join as a Plaintiff. At that time, Plaintiffs' only remaining claim was for nominal damages. However, in an Order dated May 19, 2008 (dkt # 99), Brittany Martin, a student currently enrolled in OHS, was permitted to join as a Plaintiff based on her recent failed attempts to gain recognition for the GSA as a noncurricular student group. Joinder of Martin revived Plaintiffs' claims for equitable relief.

After this litigation commenced, SBOC created Board Policy Section 4.30(II)(D), which states:

> To assure that student clubs and organizations do not interfere with the School Board's abstinence only sex education policy and the School Board's obligation to promote the well-being of all students, no club or organization which is sex-based or based upon any kind of sexual grouping, orientation, or activity of any kind shall be permitted.

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously

2

stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. ANALYSIS

#### A. The Equal Access Act

The EAA states in relevant part:

> It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or to discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meeting.

20 U.S.C. § 4071(a). "A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." 20 U.S.C. § 4071(b). Schools provide a "fair opportunity" for students to conduct a meeting if the school uniformly ensures that:

> (1) the meeting is voluntary and student-initiated;
> (2) there is no sponsorship of the meeting by the school, the government, or its agents or employees;
> (3) employees or agents of the school or government are present at religious meetings only in a nonparticipatory capacity;
> (4) the meeting does not materially and substantially interfere with the orderly conduct of educational activities within the school; and
> (5) nonschool persons may not direct, conduct, control, or regularly attend activities of student groups.

20 U.S.C. § 4071(c). Once a limited open forum is established, the EAA's final provision creates an exception to a secondary school's obligation to recognize a noncurricular student group by stating:

> Nothing in this subchapter shall be construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary.

20 U.S.C. § 4071(f).

SBOC appears to concede, based on the absence of arguments to the contrary, that OHS

4

provides a limited open forum by (1) recognizing non-curriculum student groups and (2) permitting these groups to meet during non-instructional time. The Supreme Court has expounded on the meaning of "curriculum related student groups" by stating:

> In our view, a student group directly relates to the school's curriculum if the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course; if the subject matter of the group concerns the body of courses as a whole; if participation in the group is required for a particular course; or if participation in the group results in academic credit. We think this limited definition of groups that directly relate to the curriculum is a commonsense interpretation of the Act that is consistent with Congress' intent to provide a low threshold for triggering the Act's requirements.

Bd. of Educ. v. Mergens, 496 U.S. 226, 239-40 (1990). A partial listing of noncurriculum student groups at OHS include the Chess Club, Junior Cattleman's Association, Card Club, Crochet Club, Venture Team, Quill and Scroll, Sign Language Club, Envirothon, Youth Crime Watch, Future Farmers of America, Interact Club, Key Club, and Fellowship of Christian Athletes. Am. Compl., at ¶¶ 28-31; *see* Mergens, 496 U.S. at 245-46 (finding that chess club was a noncurricular student group). SBOC has not suggested that each of these groups are curriculum related student groups or that they all meet during instructional time. Moreover, assuming the titles of the student groups are indicative of their activities and objectives, no inference that they are curriculum related student groups is warranted. OHS is also a public secondary school that receives federal financial assistance. Accordingly, OHS provides a limited open forum, thereby triggering the corresponding obligations under the EAA. *See* Mergens, 496 U.S. at 242 (distinguishing the meaning of "limited open forum" as defined by the EAA from a "limited public forum").

As a limited open forum, the EAA mandates that any student group at OHS may "meet on the basis of religious, political, philosophical, or other content of . . . speech." 20 U.S.C.

§ 4071(a). The expansive nature of the EAA's description of student groups encompassed by the statute clarifies that there are few limits to the types of student groups permitted to meet once the EAA is triggered. 20 U.S.C. § 4071(a); *see* Mergens, 496 U.S. at 239 (stating that the language of the EAA warrants a broad reading). The only proviso limiting a student group's ability to meet is the power reserved to school authority to limit speech when necessary to "maintain order and discipline on school premises, to protect the well being of students and faculty, and to assure the attendance of students at meetings is voluntary." 20 U.S.C. § 4071(f). Unless one of these limitations applies to the GSA, Defendants are statutorily barred from preventing the GSA from meeting and attaining full recognition as a noncurricular student group along with all attendant benefits granted to all other such groups.

>According to the by-laws of the GSA, the purpose of the GSA is:
>
>A. To promote tolerance and equality among students of all sexual orientations and gender identities through educational efforts and awareness-building.
>B. To inform members and the student body of issues and events effecting [sic] the lives of lesbian, gay, bisexual, transgender, and straight ally youth.
>C. To create a safer, more respectful learning environment for all students.
>D. To work in coalition with administration and other on-campus clubs to expose and dismantle oppressions and prejudice in all of their expressions.
>E. To create a safe, welcoming space for LGBT and Straight Ally students to socialize and talk together about issues they hold in common.

*See* SBOC Statement of Undisputed Material Facts, Ex. F, By-Laws of the Gay-Straight Alliance (dkt # 107). Plaintiffs contend that as these by-laws describe, the GSA's object is to enhance order and discipline within OHS by promoting tolerance and to protect the well-being of students, particularly those students with a sexual identity other than heterosexual.

6

Defendant SBOC counters that providing equal access and recognition to the GSA as a noncurricular student group is contrary to OHS's abstinence only policy and would place the members of the GSA at risk. In support of these arguments, SBOC asserts that denying equal access to the GSA: 1) is necessary to maintain the integrity of the abstinence only program, 2) will avoid unhealthy premature sexualization of students, 3) will protect GSA members from the risk of contact with potentially dangerous outside adult influences, and 4) will ensure that GSA members do not have access to adult only materials

### 1. SBOC's Abstinence Only Program

SBOC contends that providing equal access to the GSA and recognizing it as a noncurricular student group would compromise its abstinence only program. SBOC points out that Congress provides grants to schools that participate in the State Abstinence Education Program ("SAEP"). SAEP is a program that:

> (A) has as its exclusive purpose, teaching the social, psychological, and health gains to be realized by abstaining from sexual activity;
> (B) teaches abstinence from sexual activity outside marriage as the expected standard for all school age children;
> (C) teaches that abstinence from sexual activity is the only certain way to avoid out-of-wedlock pregnancy, sexually transmitted diseases, and other associated health problems;
> (D) teaches that a mutually faithful monogamous relationship in the context of marriage is the expected standard of human sexual activity;
> (E) teaches that sexual activity outside of the context of marriage is likely to have harmful psychological and physical effects;
> (F) teaches that bearing children out-of-wedlock is likely to have harmful consequences for the child, the child's parents, and society;
> (G) teaches young people how to reject sexual advances and how alcohol and drug use increases vulnerability to sexual advances; and
> (H) teaches the importance of attaining self-sufficiency before engaging in sexual

7

activity.

42 U.S.C. § 710(b)(2). The State of Florida also statutorily mandates abstinence to be a core feature of its instruction concerning the nature and transmission of acquired immune deficiency syndrome. Fla. Stat. § 1003.46. SBOC, however, does not clarify how recognizing the GSA as a noncurricular student group would compromise its abstinence only program. Despite the paucity of specifics provided by SBOC on this matter, this Court infers that SBOC is suggesting that by recognizing the GSA, the abstinence only program would be compromised by 1) creating a risk that SBOC could lose the federal funding it receives for implementing the abstinence only program or contravene Florida law, 2) that the GSA's tolerance based mission is inherently incompatible with SBOC's abstinence only program, or that 3) the abstinence only program's heavy reliance on marriage as the only acceptable context for sexual relations is fundamentally inconsistent with non-heterosexual identity because only heterosexual marriages are permitted in Florida.

a. Loss of Federal Funding and Contravention of Florida Law

As an initial matter, SBOC does not specifically assert that it is a recipient of federal funds under the SAEP program. Nevertheless, assuming *arguendo* that SBOC receives SAEP funding, SBOC provides no evidence that recognizing the GSA would create the risk of losing the federal funds received for implementing the abstinence only program or that granting the GSA equal access would violate Florida law. There are over 700 other schools throughout the United States with student groups similar to the GSA at OHS, approximately 80 of which are in Florida. *See* SBOC Statement of Undisputed Material Facts, Ex. F, GLSEN Registered GSA/Student Clubs (dkt # 107). Defendant has put forth no evidence that any school has lost its SAEP funding for

recognizing a non-heterosexual student group or that any threat of such action has been raised. Nor has SBOC presented convincing evidence that recognizing the GSA would violate Florida law. Indeed, the Supreme Court has repeatedly clarified that recognition of a non-curricular student group does not constitute an act of the school, which is the primary reason why religious noncurricular student groups do not run afoul of the Establishment Clause. See Mergens, 496 U.S. at 247-48 (stating that "secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis"); Widmar v. Vincent, 454 U.S. 263, 271-75 (1981) (finding that equal access for religious groups at the university level does not violate the Establishment Clause). If secondary school students are considered sophisticated enough to distinguish between student speech permitted on a nondiscriminatory basis and official acts of the school, it follows that Congress, in its provision of federal funds to the states, is capable of drawing the distinction as well, as are Florida's courts.

b. Inconsistency of the Abstinence Only Program with the GSA's Mission

SBOC has failed to demonstrate that the GSA's mission to promote tolerance towards individuals of non-heterosexual identity is inherently inconsistent with the abstinence only message SBOC has adopted. SBOC has not clarified how dialogue promoting tolerance towards non-heterosexual individuals is antithetical to principles of abstinence. However, the crux of such a proposition appears to be that because the topic of tolerance relating to sexual identity is a subset of the topic of sexuality generally, the dialogue required to discuss tolerance towards non-heterosexuals is impossible to convey without doing violence to the principle of abstinence. This conclusion, however, relies on the premise that discussing the subject of sexuality undermines the

9

advocation of abstinence. Yet, if such a premise were indeed true, then virtually any topic touching on sexual issues, including those already part of SBOC's curriculum such as pregnancy and sexually transmitted disease, would also undermine an abstinence only policy. SBOC has pointed to no special factor pertaining to tolerance towards non-heterosexuals that distinguishes that topic from other matters concerning sexuality generally. Accordingly, this Court dismisses the unsupported assertion that curriculum based discussions of sexually related topics related to heterosexual activity may occur without violating the abstinence only program but that such a violation would occur in the case of noncurricular based discussions of tolerance towards non-heterosexuals.

> c. Inconsistency of the Abstinence Only Program with Non-Heterosexual Identity

SBOC has also failed to establish that its abstinence only program would be undermined by recognizing the GSA because the abstinence program's central tenet is that sexual relations are only appropriate between married spouses. Given that marriage in Florida is only permitted between a man and woman, the abstinence only program undeniably provides no forum for the discussion of sexual topics concerning non-heterosexuals. *See* § 741.212, Fla. Stat. (prohibiting marriages or the recognition of marriages between persons of the same sex). Although certain non-heterosexual topics may conceivably be inconsistent with SBOC's abstinence only message, it does not follow that the GSA's tolerance based message is inconsistent with SBOC's abstinence only program. It also bears mentioning that the prudence or constitutionality of SBOC's abstinence only program is not at issue here. Rather, the pertinent question is whether SBOC's reliance on its abstinence only policy is sufficient to satisfy the EAA's well-being exception.

Of particular relevance to SBOC's ability under the EAA's well-being exception to rely on its abstinence only message as grounds for denying the GSA equal access and recognition is the difference in the principles underlying SBOC's abstinence only policy when delivered to heterosexuals versus non-heterosexuals. SBOC's abstinence only message, when directed towards heterosexual students, promotes health and safety by advocating abstinence as a means of preventing teenage pregnancy and sexually transmitted disease. *See* 42 U.S.C. § 710(b)(2)(C); § 1003.46(2)(b), Fla. Stat. SBOC's abstinence message encourages family stability and the welfare of children by promoting two-parent families with married spouses. *See* § 42 U.S.C. § 710(b)(2)(F); § 1003.46(2)(a), Fla. Stat. The abstinence only program also teaches that "a mutually faithful monogamous relationship in the context of marriage is the expected standard of human sexual activity." 42 U.S.C. § 710(b)(2)(D). These objectives are approved by Congress, supported by Florida law, and promoted by SBOC. *See* 42 U.S.C. § 710(b)(2); § 1003.46, Fla. Stat.; SBOC Board Policy Section 4.30(II)(D). These elements of the abstinence only program demonstrate interests concerning the health and safety of students and child welfare. The program also manifests a moral element because a declaration that "a mutually faithful monogamous relationship in the context of marriage is the *expected standard* of human sexual activity" is a declaration grounded in principles of right and wrong.[1] 42 U.S.C. § 710(b)(2)(D) (emphasis added).

When directed towards non-heterosexual students, however, SBOC's abstinence only message loses the core of its health and safety and child welfare component because a marriage-dependant abstinence only message is of *de minimus* relevance to non-heterosexuals. OHS's non-

---

[1] The word "moral" is defined as "of, pertaining to, or concerned with the principles or rules of right conduct or the distinction between right and wrong." Random House Webster's Unabridged Dictionary 1249 (2d ed. 2001)

11

heterosexual students cannot engage in married sexual relations because Florida permits marriage only between a man and a woman. § 741.212, Fla. Stat. The benefits that accrue to children with married parents are of little use to SBOC's non-heterosexual students who may aspire to parenting but lack the prospect of a legally sanctioned marriage in the State of Florida. The considerations pertaining to the benefits of marriage prior to procreation likewise lack relevance to SBOC's non-heterosexuals students who are not permitted to marry in Florida.

Education concerning sexually transmitted disease contains curriculum relevant to heterosexuals and non-heterosexuals alike. However, an STD prevention curriculum reliant on abstinence outside of marriage does not provide information of a kind usable by non-heterosexuals to prevent disease. *See* § 1003.46, Fla. Stat. (stating that STD instruction shall emphasize abstinence until marriage as a form of prevention of pregnancy, STD's and AIDS). Similarly, teaching that "a mutually faithful monogamous relationship in the context of marriage is the *expected standard* of human sexual activity" is not a principle of relevance to a non-heterosexual person. Therefore, when delivered to non-heterosexuals, SBOC's marriage-dependant abstinence only message provides *de minimus* health and safety benefits to students and espouses no principles of child welfare applicable to non-heterosexuals. With the health and safety and child welfare components absent when delivered to a non-heterosexual audience, the remaining element comprising SBOC's abstinence only message is a moral one that relies primarily on a viewpoint of principles of right and wrong for its support.

The prudence of SBOC's abstinence only is not at stake here and the program has received the imprimatur of Congress, the Florida legislature and SBOC. *See* 42 U.S.C. § 710(b)(2); § 1003.46, Fla. Stat.; SBOC Board Policy Section 4.30(II)(D). However, SBOC's abstinence only

program is of limited utility to OHS's non-heterosexual students, the well-being of whom must also be considered. Therefore, any inconsistency between SBOC's abstinence only program and the GSA's stated purpose is an insufficient ground upon which to invoke the EAA's well-being exception. Moreover, reliance by SBOC on its abstinence only policy to exclude the GSA from attaining equal access and recognition as a noncurricular student group is unavailing, in light of the EAA's explicit mandate that "[t]he provisions of this subchapter shall supersede all other provisions of Federal law that are inconsistent with the provisions of this subchapter." 20 U.S.C. § 4074.

### 2. Premature Sexualization

SBOC also contends that recognizing the GSA as a noncurricular student group would promote the premature sexualization of students. Undoubtedly, the premature sexualization of adolescents is a primary concern of educators and society at large. Although statistics derived from social studies inevitably provide assessments that vary greatly, at least one source, provided for illustrative purposes only, states that "[a]pproximately 47 percent of high school students have had sexual intercourse. Each year, nearly 900,000 teenage girls . . . become pregnant (340,000 are 17 or younger). The rates of sexually transmitted diseases are higher among teenagers than among adults, and 35 percent of girls have been pregnant at least once by the age of 20." Harold P. Southerland, *"Love for Sale"- Sex and the Second American Revolution*, 15 Duke J. Gender L. & Pol'y 49, 87 n.181 (2008) (quotation marks omitted).

While the precise accuracy of such figures are uncertain, these statistics merely illustrate the point that premature sexualization of secondary school students is a legitimate concern and a

matter of national importance. Nevertheless, this Court is unable to discern how a club whose stated purpose is to promote tolerance towards non-heterosexuals within the student body promotes the premature sexualization of students, either in absolute terms or relative to any other already existing curriculum based instruction which touches on topics of a sexual nature. SBOC's argument that discussions of tolerance towards non-heterosexuals will promote premature sexualization of students is speculative at best and clearly without evidentiary support in the record.

### 3. Access by Non-Faculty Adults

SBOC also contends that recognizing the GSA as a noncurricular student group would place its student members at risk by facilitating access to students by adults who may pose a danger to the students. The simple and obvious solution to this dilemma is to require all noncurricular student groups to seek permission from the principal or a designee in order for any adult who is not a faculty member to attend the meeting of any noncurricular student group or to contribute to its organization or operation. While a host of other measures would be suited to resolve this concern, SBOC may address this concern as it sees fit.[2]

### 4. Student Well-Being and Maintaining Order and Discipline

As already stated, once a secondary school has established itself as a limited open forum, the EAA provides that "[n]othing in this subchapter shall be construed to limit the authority of the school . . . to maintain order and discipline . . . [or] to protect the well-being of students and

---

[2] SBOC alleges that the website of a similar organization at another high school contains a link to pornographic material. The information provided by an organization that is not a party to this case is irrelevant, and the argument is dismissed.

14

faculty." It is self-evident that this language is intended to protect the well-being of all students, heterosexual and non-heterosexual. Accordingly, SBOC is obligated to take into account the well-being of its non-heterosexual students in assessing whether acknowledging the GSA as a noncurricular student group inures to the well-being of students. SBOC has failed to demonstrate that recognition of the GSA, a noncurricular student group promoting tolerance towards non-heterosexual students, would jeopardize the well-being of students. Additionally, SBOC has failed to show that permitting non-heterosexual students to establish a venue promoting unity and collective action is likely to detract from the maintenance of order and discipline.

Having addressed SBOC's objections and contentions concerning the well-being exception, this Court finds that SBOC is statutorily obligated by the EAA to grant equal access and recognition to the GSA as a noncurricular student group. In doing so, SBOC must grant the GSA all attendant benefits uniformly afforded to each of its noncurricular student groups and may not place restrictions on the GSA that are not uniformly applied to all noncurricular student groups. This finding is consistent with the holdings of other courts that have confronted claims by student organizations similar to the GSA for equal access and recognition as noncurricular student groups under the EAA. Straight and Gays for Equality v. Osseo Area Schs.-Dist. No. 279, Civ 05-2100 (JNE), 2007 WL 2885810, at *1 (D.Minn. 2007); Franklin Cent. Gay/Straight Alliance v. Franklin Township Cmty. Sch. Corp., IP01-1518 (LJM), 2002 WL 32097530, at *2 (S.D.Ind. 2002); East High Gay/Straight Alliance v. Bd. of Educ. of Salt Lake City Sch. Dist., 81 F. Supp.2d 1166, 1198 (D.Utah 1999); *contra* Caudillo v. Lubbock Indep. Sch. Dist., 311 F. Supp.2d 550 (N.D.Tex. 2004) (relying on the well-being exception to deny recognition of non-heterosexual student group, where Texas law criminally penalized homosexual acts between minors and student group website

15

provided links to lewd and obscene content).

SBOC may ensure that the GSA adheres to its by-laws by avoiding topics of sexual education reserved for instruction by qualified teachers in a classroom environment and may also ensure that the GSA adheres to its stated purpose of promoting tolerance. SBOC may also establish reasonable limitations to restrict student access to the GSA, including written parental consent prior to becoming a member, as long as such limitations apply equally to all noncurricular student groups. Indeed, SBOC is free to eliminate every noncurricular student group to avoid granting the GSA equal access and recognition. While such action is arguably extreme and questionable as to the well-being of the entire student body, it is nevertheless within SBOC's power to do so, at least as far as compliance with the EAA is concerned. Accordingly, this Court also concludes that SBOC's Board Policy Section 4.30(II)(D) is in violation of the EAA and is therefore unenforceable.

B.   The First Amendment

Plaintiffs also contend that SBOC's refusals to recognize the GSA as a noncurricular student organization violated their First Amendment rights. In assessing this claim, it bears remembering that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Sch. Dist., 393 U.S. 503, 506 (1969). On the other hand, "the constitutional rights of students are not automatically coextensive with the rights of adults in other settings." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675 (1986).

While the Supreme Court has ruled on various First Amendment cases related to public

16

schools as a limited public forum, this Court finds the student speech cases most pertinent to this cause. See Morse v. Frederick, 127 S. Ct. 2618 (2007); Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988); Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675 (1986); Tinker v. Des Moines Indep. Sch. Dist., 393 U.S. 503 (1969). In deciding these cases, however, the Supreme Court has acknowledged that its mode of analysis in resolving these cases has not been entirely consistent. Morse, 127 S. Ct. at 2627 (stating that "Fraser established that the mode of analysis set forth in Tinker is not absolute"). It is therefore necessary to determine which of the Supreme Court's student speech cases is most pertinent to the instant matter.

In Tinker, certain students were suspended for wearing black arm bands in political protest of the Vietnam war. 393 U.S. at 508. Evaluating the students' conduct by asking whether it "materially and substantially interfere[d] with the requirements of appropriate discipline in the operation of the school," the Court found that the students' conduct was protected by the First Amendment. Id. at 509. Fraser involved a student who was suspended for making "an elaborate, graphic, and explicit sexual metaphor" at a school assembly. 478 U.S. at 678. The Court in Fraser declined to employ Tinker's "substantial disruption" analysis, in favor of an approach allowing school administrators to circumscribe speech by determining "what manner of speech in the classroom or in school assembly is inappropriate." Id. at 683.

In Kuhlmeier, staff members of a school newspaper challenged the school's refusal to publish two articles. 484 U.S. at 263. Analyzing the case under Tinker, the Court found that school administrators did not violate the First Amendment by exercising control over speech that the public might reasonably believe to bear the imprimatur of the school. Id. at 271. Finally, Morse involved a student at a school sponsored event holding up a banner promoting illegal drug

use. 127 S. Ct. at 2622. The principal confiscated the banner and suspended the student. Id. The Court found that school administrators may take steps to prevent speech that can be reasonably regarded as promoting illegal drug use. Id.

Here, the desire of the GSA to meet as a group to discuss matters pertinent to the challenges presented by their non-heterosexual identity and to build understanding and trust with other heterosexual students sounds in the political speech addressed in Tinker. *See* Gillman v. School Bd. for Holmes County, Fla., 5:08CV34 (RS), 2008 WL 2854266, at *9 (N.D.Fla. 2008) (applying Tinker to find that expressions of tolerance towards non-heterosexuals in a public high school are purely political expressions protected by the First Amendment). The GSA's intent to gain recognition as a noncurricular student group is entirely dissimilar from the advocation of illegal drug use, violence, and lewd conduct carried out before the entire student body. Moreover, the GSA's tolerance based mission is not a message reasonably attributable to SBOC. Therefore, the pertinent question is whether the GSA's intent to gain recognition as a noncurricular student group "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school." Tinker, 393 U.S. at 509.

For the reasons stated above in the analysis pertaining to the EAA, this Court finds that the GSA's tolerance based message would not materially or substantially interfere with discipline in the operation of the school. In order for SBOC to justify its refusals to recognize the GSA as a student organization, "it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." Id. This is precisely what SBOC has failed to do. The reasons presented by Defendant for denying the GSA equal access and recognition sound in a desire to avoid the

discomfort and unpleasantness of tolerating a minority of students whose sexual identity is distinct from the majority of students and discordant to SBOC's abstinence only program. Ensuring that this minority of students are afforded meaningful expression secures the precept of freedom from external dominion over thought and expression exalted by the founders and safeguarded by the First Amendment. U.S. Const. amend. I; *see* Good News Club v. Milford Cent. Sch., 533 U.S. 98, 120 (2001) (stating that viewpoint discrimination violates the Free Speech Clause of the First Amendment); Rosenberger v. Rector & Visitors of Univ. Of Va., 515 U.S. 819, 835-36 (1995) (expressing concern that viewpoint discrimination can chill individual thought and expression).

C. Damages

With respect to damages to which Plaintiffs are entitled under their § 1983 claim, they may recover monetary damages only upon proving actual compensable injury, such as out-of-pocket loss, impairment to reputation, or mental and emotional distress. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307-08 (1986). When no actual compensable injury has occurred, nominal damages are the "appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." Id. at 308 n.11 (quotation marks omitted). Nominal damages are available for violations of the First Amendment. Familias Unidas v. Brisco, 619 F.2d 391, 402 (5th Cir. 1980); *see* Gonzalez v. School Bd. of Okeechobee County, 06-14320 (KMM), 2008 WL 2116610, at *4 (S.D.Fla. 2008). Here, Plaintiffs have demonstrated no compensable injury. Therefore, Plaintiffs are entitled to $1 in nominal damages on their § 1983 claim and a permanent injunction. In light of having obtained a permanent injunction and nominal damages, Plaintiffs have achieved a victory that is more than technical or *de minimus* because it has resulted in a material alteration of the legal relationship of the Parties. Plaintiffs are therefore entitled to prevailing party status. Caban-

Wheeler v. Elsea, 71 F.3d 837, 842 (11th Cir. 1996) (stating that an award comprised solely of nominal damages is sufficient to grant a § 1983 plaintiff prevailing party status; *see also* Farrar v. Hobby, 506 U.S. 103, 116-17 (1992); Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (dkt # 106) is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment (dkt # 108) is GRANTED. SBOC is permanently enjoined from denying equal access and recognition to the GSA at OHS as a noncurricular student group which shall be afforded all rights and privileges granted to other noncurricular student groups. The GSA may engage in activities consistent with its by-laws and consonant with the terms of this Order. SBOC may monitor the activities of the GSA in a manner consistent with this Order. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of July, 2008.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record